**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 8 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DEE NORRIS,

      Plaintiff - Appellant,

v.

BAXTER HEALTHCARE
CORPORATION,

      Defendant - Appellee.

No. 03-1471

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 91-S-1021)**

---

Derek Regensburger (Stephen H. Cook on the brief) of The Law Firm of Stephen
H. Cook, P.C., Boulder, Colorado, for Plaintiff-Appellant.

Mary A. Wells (Suanne M. Dell of Wells, Anderson & Race, LLC, Denver,
Colorado; Debra E. Pole and Roger K. Smith of Sidley, Austin, Brown & Wood,
LLP, Los Angeles, California, with her on the brief), Wells, Anderson & Race,
LLC, Denver, Colorado, for Defendant-Appellee.

---

Before **SEYMOUR**, **McKAY,** and **MURPHY**, Circuit Judges.

---

**McKAY**, Circuit Judge.

This case involves Plaintiff's claims of systemic disease allegedly caused by a silicone gel breast implant Plaintiff received in 1974. The implant at issue was manufactured by Defendant's predecessor. In 1970, Plaintiff underwent bilateral breast augmentation surgery and received her first set of silicone gel and saline filled breast implants manufactured by a division of Dow Corning Corporation. Four years later, due to problems with her left implant, Plaintiff had the left implant removed and replaced with another silicone gel and saline filled breast implant manufactured by Defendant's predecessor corporation. This implant is the sole focus of this appeal. In 1978, because of a rupture of her right implant, Plaintiff had both implants replaced with another set of implants manufactured by Dow Corning. Plaintiff points to no specific evidence in the record that the left implant which was manufactured by Defendant had leaked prior to the time of removal.

Beginning in 1987, Plaintiff began to suffer from a variety of ailments including pain in her right shoulder and foot and pain and swelling in her right knee, hip, and other joints. On October 23, 1989, Plaintiff had both implants removed because her doctor believed that she had silicone-induced lupus. The diagnosis was subsequently changed by Dr. Vasey, one of Plaintiff's proffered experts, to silicone-associated connective tissue disease–autoimmune disease

caused by silicone which leaked from breast implants. This disease allegedly caused Plaintiff to suffer tenderness in the muscles of her mid and low back in addition to joint swelling in her upper extremities.

In 1991, Plaintiff filed suit in Colorado state court against several Defendants, including Defendant Baxter as the corporate successor to Heyer-Schulte, seeking compensatory and punitive damages based on claims of negligence, strict liability, breach of implied warranties, and breach of express warranties/misrepresentation. Plaintiff alleged two types of injuries as a result of her silicone breast implants: (1) systemic autoimmune disease and (2) local injuries such as pain suffered as a result of scarring and leakage. Plaintiff further alleged that Defendants knew that there was evidence linking silicone breast implants to various serious diseases. The action was removed to federal court and transferred to the Northern District of Alabama for consolidated proceedings. Dow Corning, the manufacturer of all but one of Plaintiff's breast implants, filed for bankruptcy. Plaintiff's claims against Baxter regarding the 1974 left implant were remanded back to the United States District Court for the District of Colorado.

After remand, Baxter moved for summary judgment on Plaintiff's systemic injury claims. Baxter argued that there was no epidemiological evidence showing an association between silicone breast implants and autoimmune disorders;

therefore, Plaintiff could not meet her burden of proof with respect to general causation. Baxter further argued that the statute of limitations barred Plaintiff's local injury claims. In her opposition to Baxter's motion for summary judgment, Plaintiff primarily relied on the expert testimony of two physicians, Dr. Vasey and Dr. Espinoza. The district court granted Baxter's motion for summary judgment on Plaintiff's systemic and local injury claims.

The issue on appeal is whether the district court erred in granting Baxter summary judgment on (1) Plaintiff's claim of systemic autoimmune disease because she failed to meet her burden of establishing a triable issue of fact that silicone breast implants are capable of causing systemic injuries[1] and (2) Plaintiff's claims for breach of warranty, negligence, and products liability on the basis that the applicable statute of limitations had expired.

We review *de novo* a district court's grant of summary judgment, applying the same legal standard employed by the district court, to determine whether there is a genuine issue as to any material fact and whether a party is entitled to judgment as a matter of law. Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ., 245 F.3d 1172, 1175 (10th Cir. 2001). Plaintiff's main assertion

---

[1]We need not specifically discuss Plaintiff's other contentions of error because they all fall within the umbrella of whether she raised a genuine issue of material fact that silicone breast implants caused her alleged systemic injuries. See Aplt. Br. at 2. Therefore, all of Plaintiff's claims are within the scope of this opinion.

on appeal is that the district court erred in finding that she failed to meet her burden of establishing a triable issue of fact that her 1974 silicone breast implant was a factor in the development of her alleged systemic injuries. To support her theory of causation, Plaintiff presented expert testimony from two doctors. That evidence was excluded by the district court.

Before specifically addressing Plaintiff's proffer of expert testimony relating to her alleged silicone-associated connective tissue disease, it is necessary to highlight the hurdle Plaintiff must overcome. We cannot consider whether Plaintiff's silicone breast implants caused her specific autoimmune disease until Plaintiff presents reliable evidence that silicone breast implants are capable of causing disease in people in general.

The district court correctly noted that, in silicone breast implant litigation, plaintiffs must show both general and specific causation. See Raynor v. Merrell Pharm., Inc., 104 F.3d 1371, 1376 (D.C. Cir. 1997) (causation in toxic tort cases is discussed in terms of general causation and specific causation); Kelley v. American Heyer-Schulte Corp., 957 F. Supp. 873, 875 (W.D. Tex. 1997); see also Jones v. United States, 933 F. Supp. 894, 900-01 (N.D. Cal. 1996), *aff'd*, 127 F.3d 1154 (9th Cir. 1997); Hall v. Baxter Healthcare Corp., 947 F. Supp. 1387, 1412-13 (D. Or. 1996). General causation is whether a substance is capable of causing a particular injury or condition in the general population and specific

causation is whether a substance caused a particular individual's injury. Plaintiff must first demonstrate general causation because without general causation, there can be no specific causation. In other words, if silicone breast implants are incapable of causing systemic injuries in anyone, it follows *a fortiori* that silicone breast implants could not have caused systemic injuries in Plaintiff.

Addressing the question of general causation, the district court first discussed the necessity of epidemiological evidence. It did not hold that epidemiology is the only admissible evidence on causation. However, the district court did conclude that it needed epidemiological evidence in order for Plaintiff to overcome Defendant's motion for summary judgment in this case. This decision was grounded largely on the fact that many epidemiological studies and other data were available regarding the alleged association between silicone breast implants and immune system diseases. Defendant had already proffered a significant body of epidemiology in support of its contention that silicone breast implants do not cause disease in anyone. The volume of epidemiological evidence is reflected in the record and in other court cases dealing with the same subject matter.[2]

---

[2]There are at least seventeen, if not more, significant published, peer-reviewed epidemiological studies that were considered by the district court. In re Breast Implant Litig., 11 F. Supp. 2d 1217, 1227 (D. Colo. 1998); Aplt. App., Vol. III, at 821 (district court's oral order incorporating the studies and articles

(continued...)

-6-

One such examination of the alleged link was conducted in 1996 when Judge Pointer, United States District Court, Northern District of Alabama, appointed a Rule 706 National Science Panel to look at available scientific literature to determine whether breast implants might cause connective tissue disease. In November 1998, the Panel issued its report, finding that "[t]he most likely conclusion from these several analyses is that there is no meaningful or consistent association between breast implants or silicone gel-filled implants and any of the conditions studied." Aplt. App., Vol. II, at 417. The Panel's immunologist, Dr. Diamond, testified that there is "no reproducible[,] reliable data" supporting the theory that silicone gel breast implants cause any immune system dysfunction. Id. at 438. The Panel's epidemiologist, Dr. Hulka, stated that she "did not find a reliable or consistent association between breast implants and any of the conditions that we studied." Id. at 457. Dr. Tugwell, the Panel's rheumatologist, stated that "there is no proven association between those diseases and silicone breast implants." Id. at 447.

In 1997, Congress instructed the United States Department of Health and Human Services to contract with the Institute of Medicine of the National Academy of Sciences to conduct a "comprehensive evaluation of the evidence for

---

[2](...continued)
discussed in In re Breast Implant Litig., 11 F. Supp. at 1231-32).

the association of silicone breast implants . . . with human health conditions . . . ." Id. at 427. In July 1999, the report concluded that there was "no elevated relative risk or odds ratio for an association of implants with disease." Id. at 430. The report further stated that there was not "even suggestive evidence" that silicone breast implants caused systemic disease. Id. at 432.

We agree with the district court that epidemiology is the best evidence of general causation in a toxic tort case. See In re Breast Implant Litig., 11 F. Supp. 2d 1217, 1224 (D. Colo. 1998); Linda A. Bailey, et al., "Reference Guide on Epidemiology," Reference Manual on Scientific Evidence at 126 (1994); see also Wilson v. Merrell Dow Pharm., Inc., 893 F.2d 1149, 1154 (10th Cir. 1990); Renaud v. Martin Marietta Corp., 749 F. Supp. 1545, 1554 (D. Colo. 1990), *aff'd*, 972 F.2d 304, 307 (10th Cir. 1992). While the presence of epidemiology does not necessarily end the inquiry, where epidemiology is available, it cannot be ignored. As the best evidence of general causation, it must be addressed.

Plaintiff disputes the necessity of epidemiological evidence citing Glastetter v. Novartis Pharm. Corp., 252 F.3d 986 (8th Cir. 2001); Kennedy v. Collagen Corp., 161 F.3d 1226 (9th Cir. 1998); and Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378 (4th Cir. 1995). See Aplt. Br. at 15-16. Plaintiff asserts that in all of these cases, epidemiological studies were unnecessary to prove general causation. These cases are inapposite. First, none involve breast implants.

Second, and more importantly, in all three cases, unlike the case at hand, there was no body of epidemiological evidence demonstrating the absence of a causal relationship. In cases where there is no epidemiology challenging causation available, epidemiological evidence would not necessarily be required.

This is not a case where there is no epidemiology. It is a case where the body of epidemiology largely finds no association between silicone breast implants and immune system diseases. We are not holding that epidemiological studies are always necessary in a toxic tort case. We are simply holding that where there is a large body of contrary epidemiological evidence, it is necessary to at least address it with evidence that is based on medically reliable and scientifically valid methodology.

In light of the significant body of epidemiological evidence proffered by Defendant, and in attempting to reach the epidemiological evidence proffered by Plaintiff, the district court necessarily focused on two expert witnesses, Dr. Vasey and Dr. Espinoza, to establish a link. Both doctors asserted a belief that silicone breast implants can cause immune system diseases. Additionally, the doctors evaluated Appellant and concluded that her specific systemic injuries were a result of her silicone breast implants. After conducting a <u>Daubert v. Merrell Dow</u>

Pharm., Inc., 509 U.S. 579 (1993), inquiry[2], the district court excluded both experts because they were unreliable.

We review *de novo* whether the district court applied the proper standard in determining whether to admit or exclude expert testimony. Dodge v. Cotter Corp., 328 F.3d 1212, 1223 (10th Cir. 2003) (citation omitted). That is, whether the district court properly performed its role as "gatekeeper" pursuant to Federal Rule of Evidence 702 and Daubert. Id.; Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1119 (10th Cir. 2004). We then review the manner in which the district court "exercises its Daubert 'gatekeeping' role in making decisions whether to admit or exclude testimony" for an abuse of discretion. Bitler, 391 F.3d at 1119; see also Dodge, 328 F.3d at 1223. "[W]e will not disturb the district court's ruling unless it is arbitrary, capricious, whimsical or manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Dodge, 328

_____

[2]The district court did not specifically state in its oral order that it was conducting a Daubert hearing. The district court did say, as part of its order, that "under Daubert, in Tenth Circuit law, the court must make the determination initially if there is a significant showing of causation based on some evidence." Aplt. App., Vol. III, at 827. Additionally, in determining whether there was a genuine issue of material fact to overcome Baxter's summary judgment motion, it was necessary for the district court to assess the admissibility of Plaintiff's experts under Daubert. The court stated that "Dr. Vasey's opinions, based on his report, appear to be based on matters which do not satisfy the scientific requirements." The court further stated that "Dr. Espinoza suffers from the same problem." Id. at 835-36.

F.3d at 1223 (citation and internal quotations omitted).

In evaluating the district court's gatekeeping role, we are not necessarily concerned with its "exact conclusions reached to exclude or admit expert testimony." Bitler, 391 F.3d at 1119. The district court must make some reliability determination on the record; however, "we recognize the wide latitude a district court has in exercising its discretion to admit or exclude expert testimony." Id. (citation omitted). The district court "has wide discretion both in deciding how to assess an expert's reliability and in making a determination of that reliability." Id. at 1120 (citation omitted).

Mindful of this deferential standard of review, we begin our discussion of the district court's exclusion of Plaintiff's expert testimony with Rule 702. See id. Rule 702 states that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . .

Rule 702 requires the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." Id. (quoting Daubert, 509 U.S. at 589). This obligation involves a two-part inquiry. Id. "[A] district court must [first] determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" Id. (quoting Daubert, 509

U.S. at 592). In making this determination, the district court must decide

"whether the reasoning or methodology underlying the testimony is scientifically

valid . . . ." Id. (quoting Daubert, 509 U.S. at 592-93). Second, the district court

must further inquire into whether proposed testimony is sufficiently "relevant to

the task at hand."[2] Daubert, 509 U.S. at 597. Because Plaintiff's proffered expert

testimony fails the first requirement, we need not specifically address the second.[3]

> In determining whether the expert's reasoning or methodology is valid,
>
> the Supreme Court has suggested that a court consider: (1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has "general acceptance." Daubert, 509 U.S. at 593-94. The Court has made clear, however, that this list is neither definitive nor exhaustive.
> . . . .
> Accordingly, a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions. Daubert, 509 U.S. at 595.

Bitler, 391 F.3d at 1120-21.

---

[2]The second inquiry is related to the first. Under the relevance prong of the Daubert analysis, the court must ensure that the proposed expert testimony logically advances a material aspect of the case. Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand). The evidence must have a valid scientific connection to the disputed facts in the case. Daubert, 509 U.S. at 591.

[3]Additionally, even if an expert's opinion or evidence is relevant and admissible, if "insufficient to allow a reasonable juror to conclude that the position more likely than not is true," it may be the basis for a grant of summary judgment. Daubert, 509 U.S. at 596.

The district court noted that Dr. Vasey and Dr. Espinoza have impressive credentials in the field of rheumatology. However, as a basis for their conclusions regarding the connection between silicone breast implants and autoimmune diseases, Plaintiff's experts completely ignored or discounted without explanation the many epidemiological studies which found no medically reliable link between silicone breast implants and systemic disease. Therefore, the district court concluded that the methodology used by Plaintiff's experts was not medically or scientifically valid. See Daubert, 509 U.S. at 592-93. Because of this, the district court determined that Plaintiff's experts' opinions were not reliably grounded in the knowledge and experience of their discipline.

In Dr. Vasey's "opinion[,] silicone gel breast implants cause both local and systemic inflammatory conditions." Aplt. App., Vol. II, at 305. As a basis for this opinion, Dr. Vasey primarily relied on his own "case series with sequential observations in many patients." Id. at 306. He further stated that his "opinion is based on the unique and atypical findings in women with silicone gel breast implants . . . [and on] sequential observations including the beneficial effect of breast implant removal." Id.

Dr. Vasey did not rely on any epidemiological studies or other controlled studies for his opinion that silicone gel breast implants can cause systemic disease. Additionally, Dr. Vasey completely ignored the many epidemiological

-13-

studies that do not find a link between silicone gel breast implants and any systemic disease. He conclusively, and without support, stated that epidemiological studies relied on by the industry "are not definitive." Id. at 307.

In order to escape the volume of contrary opinions, Dr. Vasey indicated that the comprehensive syndrome he described, "atypical fibromyalgia chronic fatigue syndrome[,] has escaped study." Id. at 306. However, he asserted that Plaintiff has "silicone associated connective tissue disease." Id. It is unclear from Dr. Vasey's opinion how Plaintiff's disease fits into the category of disease that has allegedly escaped study. Additionally, he never discusses why the voluminous other studies on silicone gel breast implants are completely irrelevant to Plaintiff's stated condition.

Like Dr. Vasey, Dr. Espinoza relied not on epidemiology but on clinical case studies and differential diagnosis. Basing his conclusion on his "prior clinical experience in dealing with this unusual association," Dr. Espinoza stated that "[i]t is my personal opinion that some individuals exposed to silicone breast implants developed systemic illness that mimic idiopathic autoimmune disorders . . . ." Aplt. App., Vol. III, at 667-68. He further said that "[i]t is my feeling that [Plaintiff's] arthritis is related to her underlying silicone breast implants." Id. at 667. While stating that his "opinion is based on a reasonable degree of medical probability," Dr. Espinoza agreed that the body of the evidence

-14-

says that there is no association between silicone breast implants and connective tissue diseases. Aplt. Id. at 667-69. He was unable to articulate why his view did not comport with the "body of the evidence," other than to say that "no study has been designed to specifically address atypical connective tissue disease . . . ." Id.

Plaintiff's experts relied solely on differential diagnosis and case studies to support their belief that silicone gel breast implants can cause systemic disease. Their reliance on differential diagnosis without supporting epidemiological evidence is misplaced and demonstrates the unreliable nature of the testimony. Observations cannot define a disease. The foundational evidence that the doctors rely upon do not reach conclusions based on accepted scientific methodology. "[D]ifferential diagnosis *assumes* that general causation has been proven . . . ." See Hall, 947 F. Supp. at 1413 (emphasis in original).

> *It is [] important to recognize that a fundamental assumption underlying [differential diagnosis] is that the final, suspected "cause" remaining after this process of elimination must actually be capable of causing the injury.* That is, the expert must "rule in" the suspected cause as well as "rule out" other possible causes. And, of course, expert opinion on this issue of "general causation" must be derived from a scientifically valid methodology.

Id. (emphasis in original) (quoting Cavallo v. Star Enterprise, 892 F. Supp. 756, 771 (E.D. Va.1995), *aff'd on this ground, rev'd on other grounds,* 100 F.3d 1150 (4th Cir. 1996). Case reports suffer from a similar failing. Case reports that state that some women with breast implants developed disease do not provide an

adequate scientific basis from which to conclude that breast implants in fact cause disease. A correlation does not equal causation.

We are unable to find a single case in which differential diagnosis that is flatly contrary to <u>all</u> of the available epidemiological evidence is both admissible and sufficient to defeat a defendant's motion for summary judgment. Plaintiff's experts' differential diagnoses and case studies are scientifically unreliable because they assume what science has largely shown does not exist–a causal connection between silicone breast implants and disease.

The district court did not abuse its discretion in exercising its <u>Daubert</u> gatekeeping role. "Although it is not always a straightforward exercise to disaggregate method and conclusion, when the conclusion simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion." <u>Bitler</u>, 391 F.3d at 1121 (citing <u>General Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997); <u>Dodge</u>, 328 F.3d at 1222; <u>see</u> <u>also</u> <u>Bragdon v. Abbott</u>, 524 U.S. 624, 653 (1998) ("Scientific evidence and expert testimony must have a traceable, analytical basis and objective fact before it may be considered on summary judgment.") (citing <u>Joiner</u>, 522 U.S. 136, 144-46 (1997)). Although "[t]rained experts commonly extrapolate from existing data," neither <u>Daubert</u> nor the Federal Rules of Evidence "require[] a district court to admit opinion evidence which is connected to existing data only by the

*ipse dixit* of the expert." Joiner, 522 U.S. at 146. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Id.

The district court determined that Plaintiff's experts did not offer valid testimony to support either general or specific causation.[4] As to the question of general causation, both experts ignored or discounted without explanation the contrary epidemiological studies. According to Plaintiff and her experts, the vast majority of epidemiological evidence which shows no strong consistent association between silicone breast implants and disease is not "useful" with regard to whether silicone breast implants cause systemic disease. Aplt. Br. at 19. Overcoming this large body of epidemiology requires more than simply stating that the studies are wrong. Mere criticism of epidemiology cannot establish causation. Conde v. Velsicol Chem. Corp., 24 F.3d 809, 814 (6th Cir. 1994) (explaining that published critiques of studies "underscore the need for further studies" but do not establish causation).

Plaintiff's and her experts' efforts to discredit the epidemiology are not peer-reviewed, are not developed independent of litigation, and are not generally

_____

[4]We note that the district court was not the first court to hold that Dr. Vasey's and Dr. Espinoza's opinions did not meet the Daubert test for expert testimony. See Bushore v. Dow Corning-Wright Corp., No. 92-344-CIV-T-26C, 1999 WL 1116920, at *7 (M.D. Fla. Nov. 15, 1999) (citing Kelley, 957 F. Supp. at 882).

accepted by the relevant scientific community. These are all important <u>Daubert</u> considerations. 509 U.S. at 593. Plaintiff and her experts have to base their positions on reliable studies and methodology. In failing to properly address the previous and contrary views, Plaintiff's experts made their opinions and testimony unreliable as to the issue of general causation.[5]

In addition, Plaintiff's experts were unreliable as to the issue of specific causation. Plaintiff's experts both based their opinions on examinations of Plaintiff, clinical experience, and case studies. In concluding that Plaintiff's systemic injuries were a result of her silicone breast implants, Plaintiff's experts attempted to demonstrate specific causation without first demonstrating general causation. Both of Plaintiff's experts agree that, at best, silicone-associated connective tissue disease is an untested hypothesis. At worst, the link has been tested and found to be untenable. Therefore, there is no scientific basis for any expert testimony as to its specific presence in Plaintiff.

Plaintiff attempted to use Dr. Vasey and Dr. Espinoza to get to epidemiological evidence which would allegedly support her position. However,

---

[5]We need not address the question of whether epidemiological studies showing a relative risk between 1.0 and 2.0 for developing symptoms of connective tissue disease from silicone breast implants are admissible evidence. The district court did not need to reach this issue because it excluded the expert opinions of Doctors Vasey and Espinoza. The district court excluded the experts' opinions not based on the epidemiological studies but based on their failure to address or discuss the prevailing contrary views out there.

the district court properly excluded these two experts that were trying to get the court to the epidemiological evidence. We cannot allow the jury to speculate based on an expert's opinion which relies only on clinical experience in the absence of showing a consistent, statistically significant association between breast implants and systemic disease.[6] This is not a case where the experts' opinions were based on "objective, verifiable evidence and scientific methodology of the kind traditionally used by rheumatologists." Kennedy v. Collagen Corp., 161 F.3d 1226, 1230 (9th Cir. 1998). Plaintiff's experts' conclusions about systemic disease have not gained acceptance in the relevant scientific community. Additionally, neither of the proffered experts demonstrated that their scientific methods were reliable to overcome the volume of contrary medical opinion regarding the alleged link between silicone breast implants and autoimmune disease. Plaintiff provided no explanation why Dr. Vasey's and Dr. Espinoza's opinions are reliable notwithstanding the epidemiological studies finding no significant risk of autoimmune disease resulting from silicone breast implants.

Plaintiff next argues that the district court erred by granting summary

---

[6]Non-epidemiological studies, "singly or in combination[,]" are "not capable of proving causation in human beings in the face of [an] overwhelming body of contradictory epidemiological evidence." Raynor, 104 F.3d at 1374; see also Elkins v. Richardson-Merrell, Inc., 8 F.3d 1068, 1073 (6th Cir. 1993); Daubert, 509 U.S. at 592.

judgment to Defendant on Plaintiff's local injury claims because they were time barred. Colorado has adopted the discovery rule to determine when a product liability action accrues. See Persichini v. Brad Ragan, Inc., 735 P.2d 168, 173 n.6 (Colo. 1987). Pursuant to the discovery rule, a plaintiff must bring her product liability and misrepresentation claims within three years[7] of when she is aware or should be aware, in the exercise of reasonable diligence, of all of the elements of the cause of action. C.R.S. § 13-80-108(1); Miller v. Armstrong World Industries, Inc., 817 P.2d 111, 113-14 (Colo. 1991). Once a plaintiff has suspicion of wrongdoing, she is under a duty to attempt to find the facts. Trinity Broad. of Denver, Inc. v. City of Westminster, 848 P.2d 916, 926-27 (Colo. 1993). Uncertainty as to the full extent of the damage does not stop the accrual of a cause of action. Taylor v. Goldsmith, 870 P.2d 1264, 1266 (Colo. App. 1994); see also Jones v. Cox, 828 P.2d 218, 224 (Colo. 1992); Dove v. Delgado, 808 P.2d 1270, 1273 (Colo. 1991).

Therefore, pursuant to Colorado law, the statute of limitations began to run when the fact of injury was known or should have been known. Plaintiff testified that, as early as 1978, she felt that something was not "normal" in her right breast

---

[7]Prior to 1986, the statute of limitations for products liability claims based upon strict liability and/or negligence in Colorado was three years after the claim for relief arose. In 1986, the statute was amended to a two-year statute of limitations. See C.R.S. § 13-80-106(1).

-20-

(not the left which is the subject of this litigation).  Aplt. App., Vol. I, at 180.

Plaintiff also admits that her doctor told her that he believed that her implants

were causing the problem and informed her that both of her implants needed to be

removed.  Id. at 182-83.  Plaintiff had both implants (including the one at issue)

removed on May 26, 1978, and replaced with implants manufactured by Dow

Corning.  Id. at 134-35, 137.  She admitted that there was scarring of the breasts

at the time of this surgery.  Id. at 137.  Based on these facts, Plaintiff had an

obligation, beginning in 1978, to investigate the problems with her breast

implants.[8]  Plaintiff did not file suit until 1991, thirteen years later–ten years past

the expiration of the statute of limitations for product liability and

misrepresentation.[9]  The district court did not err in granting summary judgment

to Baxter on Plaintiff's product liability and misrepresentation claims.

The district court also did not err in granting summary judgment to Baxter

on Plaintiff's breach of warranty claims.  A plaintiff is obligated to bring her

---

[8]Plaintiff unsuccessfully attempts to use her alleged systemic injuries to argue that her claims based on her local injuries were not barred by the statute of limitations.  See Aplt. Br. at 41-42.

[9]We do not even begin to discuss how Plaintiff has been unable to dissect the alleged local injuries from Defendant's implant from all of the alleged local injuries caused by the Dow Corning implants.  Even if Plaintiff were not barred by the statute of limitations, the record reflects that Plaintiff had continuous local injuries from her repeated explantation and implantation surgeries which were unrelated to Defendant's implant.  Aplt. App., Vol. I, at 137-38.

breach of warranty claims within four years[10] of the date of delivery or sale of the product unless the warranty explicitly extends to future performance of the product. C.R.S. § 4-2-725; <u>Wieser v. Firestone Tire & Rubber Co.</u>, 596 F. Supp. 1473, 1475 (D. Colo. 1984); <u>Persichini</u>, 735 P.2d at 176. Plaintiff received Defendant's implant in 1974. Plaintiff has submitted no argument or evidence that Defendant provided her with a warranty explicitly based on the future performance of her implant. The statute of limitations for her breach of warranty claim expired in 1978.

**AFFIRMED.**

---

[10]The statute of limitations for breach of warranty claims in Colorado in 1974 was four years. <u>See</u> 1965 Colo. Sess. Laws, ch. 330, § 155-2-725(1), at 1344.