**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 22, 2010**

Elisabeth A. Shumaker
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CARLOS CRUZ; ANDRES
HERNANDEZ; GENARO PEREZ
IBARRA; RACHEL HIGGINS, ESQ.,
as Personal Representative of Narciso
Bandala-Flandes, Deceased; PAULA
GAMINO-LAZARO; GUADALUPE
BANDALA-GAMINO; MONICA
BANDALA-GAMINO; MIGUEL
ANGEL BANDALA-GAMINO,

    Plaintiffs-Appellants,


ZIA TRUST, INC., a New Mexico
Corporation, as Personal
Representative of the Estate of
Mitchell Rosario Ortega, and as
Conservator of Irvin Naveda Rosario
and Leobardo Rosario Quitario,

    Plaintiff-in-Intervention,

v.

BRIDGESTONE/FIRESTONE
NORTH AMERICAN TIRE, LLC,

    Defendant-Appellee.

No. 08-2242
(D.C. No. 6:06-CV-00538-BB-DJS)
(D. New Mex.)

# ORDER AND JUDGMENT[*]

Before **O'BRIEN**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.

This products liability action arose out of a fatal vehicle accident that occurred in February 2006. Plaintiffs allege that the left rear tire ("subject tire") on their 1988 GMC van suddenly and unexpectedly deflated, causing the van with its twelve occupants to overturn. The district court precluded their expert, David Osborne, from testifying that the subject tire was defective in design for failing to include nylon cap plies, and thereafter granted summary judgment to defendant Bridgestone/Firestone North American Tire, LLC ("Bridgestone/Firestone" or "defendant"). For the reasons that follow, we affirm.

Plaintiffs Carlos Cruz, Andres Hernandez, and Genaro Perez Ibarra suffered severe and extensive injuries when the van overturned. Passengers Narcisco Bandala-Flandes and Mitchell Rosario Ortego suffered fatal injuries. Mr. Cruz and Mr. Hernandez filed suit against Bridgestone/Firestone in New Mexico state court for personal injuries and wrongful death.[1] Bridgestone/Firestone removed

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, *res judicata*, and collateral estoppel. It may be cited, however, for its persuasive value consistent with the terms and conditions of Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Zia Trust, Inc., as the personal representative of the estate of Mitchell Rosario Ortega, and as conservator for Irvin Naveda Rosario intervened as

the suit to federal court on the basis of diversity jurisdiction.

Plaintiffs proffered Mr. Osborne as an expert witness for the purpose of opining on the alleged defects in the subject tire. Following a forensic examination, Mr. Osborne concluded that the tire was defective because of defendant's failure to design it with a nylon cap ply. He reasoned:

> [T]he tire failed from a belt-to-belt separation that eventually led to the detachment of the top belt and tread from the tire in what is commonly called a tread separation. . . . It is my opinion that the rubber between the belt edges on the non-serial side failed from fatigue because it was not robust enough to withstand the normal forces acting upon the tire.

Aplt. App., vol. II at 427.

> [I]t is my opinion that the failure to design the LT (Light Truck) tire in question with a nylon cap ply was a design defect that if it had been designed into the tire, would have prevented the failure from occurring before the tire was worn out. A nylon cap ply is a layer of rubberized nylon cords that is wrapped around the tire so that it goes over the top of the two steel belts and under the tread. A nylon cap ply forms a tight band over the two belts and acts like a tourniquet, restricting the movement of the belts, particularly at the belt edges. By restricting the movement of the belts, the nylon cap ply reduces the stresses at the belt edges and therefore reduces the fatiguing effect of the many cyclic loadings during a tire's lifetime.

*Id*. at 436.

Bridgestone/Firestone moved to exclude Mr. Osborne's testimony for want

---

plaintiff. Subsequently, Mr. Cruz and Mr. Hernandez amended their complaint to join Mr. Ibarra, Rachel Higgins, Esq., Paula Gamino-Lazaro, Guadalupe Bandala-Gamino, Monica Bandala-Gamino, and Miguel Angel Bandala-Gamino as parties plaintiff.

of adequate indicia of reliability, asserting that "Osborne: (1) has conducted no testing to support his opinions, (2) has no scientific studies to support his opinions, (3) has not subjected his opinions or methodology to peer-review, and (4) cannot establish the rate of error for his opinions or methodology given his lack of testing." *Id.* at 126. At the same time, Bridgestone/Firestone filed a motion for summary judgment arguing that "[w]ithout a qualified tire expert, Plaintiffs cannot make the requisite showing to survive a Motion for Summary Judgment." *Id*. at 294.

The district court granted Bridgestone/Firestone's motion to exclude Mr. Osborne's testimony insofar as it related to his nylon cap ply theory. It then determined that there was no evidence to support plaintiffs' remaining claims and granted summary judgment to defendant.

"Fed[eral] R[ule] of Evid[ence] 702 imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). Although "the gatekeeper inquiry under Rule 702 is ultimately a flexible determination, . . . a district court, when faced with a party's objection, must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000). We review the district court's evidentiary determinations under the deferential abuse of discretion standard, *see Specht v.*

*Jensen*, 853 F.2d 805, 810 (10th Cir. 1988), and "we will not disturb the ruling unless it is arbitrary, capricious, whimsical or manifestly unreasonable, or we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (citations and internal quotation marks omitted).

To perform their gatekeeper duty, district courts engage in a two-pronged analysis, determining first whether an expert is qualified to render an opinion by "knowledge, skill, experience, training, or education" and, second, whether the expert's opinions are "reliable" under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). *Ralston*, 275 F.3d at 969 (quoting Fed. R. Evid. 702). "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1204 (10th Cir. 2002) (internal quotation marks omitted).

The Court in *Daubert* articulated four non-exclusive factors which may be applicable to the district court's assessment:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Goebel*, 348 F.3d at 991-92 (citing *Daubert*, 509 U.S. at 593-94). "[T]he test of

reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *see id.* at 149 (holding *Daubert* principles applicable to all Rule 702 expert reliability determinations and affirming district court's exclusion of tire expert's opinion that manufacturing defect caused tire tread separation). The purpose of the inquiry is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 902 (citation and quotation marks omitted).

The district court identified and applied the *Daubert* framework. First, the court observed that although Mr. Osborne had served several years as an international expert on tire failures and had extensively examined the tire, he did "not perform[] any testing specifically related to his opinions in this case. Nor is he aware of any testing on nylon caps vis-a-vis tire separation." Aplt. App., vol. III at 1134. Second, the court noted that Mr. Osborne had offered no scientific literature, and thus no peer-reviewed studies, in support of his opinion. Finally, Mr. Osborne had conceded that no tire standard in the United States suggested, much less required, the use of nylon cap plies in tires at the time the subject tire was manufactured. Invoking the court's conclusion in *Vigil v. Michelin N. Am., Inc.*, No. EP-05-CV-001-KC, 2007 WL 2778233 (W.D. Tex. filed Aug. 24, 2007),

which characterized Mr. Osborne's "unsubstantiated leaps in logic" regarding the defectiveness of tires without nylon cap plies as "offen[sive to] the core of the *Daubert* holding [with] no rightful place in the courtroom," *Vigil*, 2007 WL 2778233, at *7, the district court precluded Mr. Osborne from testifying on his nylon cap ply theory. The court also precluded Mr. Osborne's testimony on "(1) the necessity for tire replacement after six years; (2) the multiple reasons why a tire can fail; (3) [the fact that] the impact damage was not the cause of the tread separation; and (4) the propriety of using this tire at 75 miles per hour" on the basis that plaintiffs failed to timely advance these theories in their Fed. R. Civ. P. 26 disclosures. Aplt. App., vol. III at 1133 n.1.

On appeal, plaintiffs contend the district court's exclusion of their expert's nylon cap ply theory constituted an abuse of discretion. Based on a careful review of the record, we disagree. As the district court explained, Mr. Osborne conducted no testing pertaining to his nylon cap ply theory, he offered no peer-reviewed studies supporting his opinion, he offered no empirical data, and he conceded that no tire standard called for use of nylon cap plies in tires. In other words, plaintiffs failed to satisfy the enumerated *Daubert* admissibility criteria. Given the absence of an evidentiary basis under *Daubert* to support Mr. Osborne's nylon cap ply theory, we conclude that the district court's expressed concerns were within the bounds of permissible choice and that its exclusion of Mr. Osborne's nylon cap ply theory was not arbitrary or capricious.

Plaintiffs argue the district court should have nevertheless admitted Mr. Osborne's testimony because it qualifies as differential analysis, which we have previously upheld as sufficient to validate an expert's opinion. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir. 2004). Differential analysis is

> more aptly characterized as a process of reasoning to the best inference. . . . [The] experts must reason, as it were, backwards to the cause of a single explosion, and to do so requires a process of eliminating possible causes as improbabilities until the most likely one is identified. Experts must provide objective reasons for eliminating alternative causes when employing a 'differential analysis.' Furthermore, the inference to the best explanation must first be in the range of possible causes; there must be some independent evidence that the cause identified is the type that could have been the cause.

*Id*. at 1237 (internal citation omitted). Our acknowledgment in *Bitler* that such testimony *may* be admissible, however, does not constitute a mandate. Here, given the failure of Mr. Osborne's nylon cap ply theory to satisfy any of the *Daubert* prongs, the district court's determination that the theory lacked a sufficiently reliable, objective independent scientific basis, as required by *Bitler*, was reasonably within its discretionary authority.

Finally, plaintiffs claim the district court erred by determining that Mr. Osborne's testimony was untimely regarding the "(1) multiple reasons why a tire can fail, and (2) that impact damage was not the cause of the tread separation." *See* Reply Br. at 1. Defendant acknowledges that "the district court may have inaccurately described the scope of the opinions it intended to exclude." Aple. Br.

at 21.  This error was harmless, however, because neither Mr. Osborne's opinion on the multiple reasons a tire can fail nor the elimination of impact damage as a cause of the failure raises a triable issue of fact as to whether the subject tire was defective.  *See* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for . . . modifying, or otherwise disturbing a judgment or order.").

We **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge