FILED
United States Court of Appeals
Tenth Circuit

March 29, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MELINDA HO,

      Plaintiff–Appellant,

v.

MICHELIN NORTH AMERICA, INC.,

      Defendant–Appellee.

No. 11-3334
(D.C. No. 6:08-CV-01282-JTM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

---

Melinda Ho appeals a district court order excluding proposed tire expert testimony

and granting summary judgment in favor of Michelin North America, Inc. ("Michelin").

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

In 2007, Ho was injured in a car accident. A third party, Linda Lange, was driving

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

on the highway when her front left tire suffered a belt and tread detachment.  Lange's vehicle veered left, crossed into oncoming traffic, and struck Ho's vehicle head on.  Ho filed a products liability action against Michelin, the manufacturer of Lange's tire, alleging defective design and manufacturing, failure to warn, breach of warranty, and negligence.

Ho designated two experts to testify regarding the cause of the tire failure.  Patrick Cassidy, a Ph.D. chemist, testified that age is a "major issue" in tire failures and that age "ha[d] an effect in this case as to the cause of failure."  However, Cassidy admitted that there were several potential causes of tire failure, and that he "would not testify that this tire failed because of age."  Cassidy also stated that, based on his investigation, there was "no scientific evidence" that the tire at issue had a manufacturing defect.  With respect to design defect, Cassidy testified that a tire without a nylon cap ply would be defectively designed, but conceded that he could not say whether a nylon cap ply would have made a difference in this particular detachment.  Finally, Cassidy stated that he was not a warning expert and could offer no expert insights into warning claims.

Ho also offered William Woehrle as an expert.  Woehrle has a B.S. in Physics and has worked in the tire industry for nearly forty years.  He also has thirty years of experience teaching accident investigation courses.  Woehrle physically examined the tire at issue and opined that the failure was the result of "insufficient fatigue endurance performance," which was due primarily to two root causes:  improper belt step-offs and a severe offset, or "dog ear," on the tire.  Inadequate adhesion, excessive age, and the

absence of a nylon cap ply were also "contributing factors" according to Woehrle. Woehrle rejected the suggestion that over-deflection (caused by overloading or under-inflation) or impact damage caused the tire failure.

In his deposition, Woehrle admitted that there is a tolerance for some step-off variation. Woehrle did not know if the tire's belt placement issues fell within Michelin's specifications. He also conceded that the peer-reviewed literature suggests that step-offs and dog ears do not cause belt separations, and he was unable to cite any peer-reviewed literature supporting his contrary theory. With respect to his belief that the tire had inadequate adhesion, Woehrle rested his conclusion on the presence of brassy colored wires. However, Woehrle admitted that the presence of brassy wires does not necessarily suggest a defect. He also relied on a single publication to draw this causal connection, issued by a tire expert with significant reputation issues following the entry of sanctions in another tire case.

Woehrle also acknowledged that his positions on over-deflection and road impacts—that they do not cause belt detachments—were contrary to the prevailing view in the scientific community. For example, Cassidy, the plaintiff's witness, testified that both issues could cause belt detachment. After being deposed, Woehrle conducted "drop testing" on a single tire to support his theory that impact does not cause tread detachment. A background document describing the development of this test states that a different type of test provides more consistent results.

With respect to design defect, Woehrle stated that the absence of a nylon cap ply

was the only design defect he claimed. He admitted that he had never designed a tire that was produced, and was not qualified to act as a tire designer. Woehrle later clarified that he did not claim that the absence of a nylon cap ply was a defect, but rather that this feature would have been beneficial. He noted that nylon cap plies were one of several methods to alleviate stress at belt edges, but that nylon cap plies had some disadvantages. Finally, as to warning defect, Woehrle admitted that he was not a warning expert and that he did not think age was an "applicable" issue in this case.

Michelin filed a motion for summary judgment in February 2011. In the motion, Michelin argued that Ho's proffered expert testimony would be inadmissible, referencing a forthcoming motion to exclude that testimony. Michelin filed its motion to exclude Woehrle's testimony the following month. The district court granted both motions in a 37-page Memorandum and Order. After unsuccessfully seeking reconsideration, Ho filed a timely notice of appeal.

## II

Under Federal Rule of Evidence 702, district courts must assess whether a witness is qualified "by knowledge, skill, experience, training, or education" to offer expert testimony. Id. As the Supreme Court explained in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), trial courts act in a "gatekeeping role" designed to ensure that expert testimony "is not only relevant, but reliable." Id. at 589, 597. The Court identified four non-exhaustive factors as useful in conducting this analysis:

(1) whether the opinion at issue is susceptible to testing and has been

subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003) (citing Daubert, 509 U.S. at 593-94).

In reviewing a district court's decision to exclude expert testimony, this court conducts a two-part inquiry. First, "we review de novo the question of whether the district court applied the proper standard and actually performed its gatekeeper role in the first instance." Dodge, 328 F.3d at 1223. "We then review the trial court's actual application of the standard in deciding whether to admit or exclude an expert's testimony for abuse of discretion." Id.

## A

Ho argues that the district court committed several legal or procedural errors in conducting the Daubert analysis. We reject each of these assertions.

First, Ho contends that the district court impermissibly treated the four Daubert factors as exclusive in concluding that Woehrle's experience could not qualify him as an expert. It is true that the four Daubert factors "do not constitute a definitive checklist or test." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (quotation omitted). Expert testimony need not "be supported by the four factors . . . from Daubert" because "specialized knowledge can be acquired through experience and training." United States v. Garza, 566 F.3d 1194, 1199 (10th Cir. 2009) (quotations omitted). Trial judges have

"considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire, 526 U.S. at 152.

We disagree with Ho's characterization of the district court's order. The court explicitly noted that the Daubert factors are non-exhaustive, and that "experience may qualify an expert to render an opinion under Rule 702." However, the court concluded that Ho failed to tie Woehrle's specific, testable opinions to anything other than "generalized experience," holding that "proper fulfillment of the court's gatekeeping duty requires more than passing along the opinion of a generally qualified expert merely because of his credentials." The district court appropriately considered experience along with the other Daubert factors, but held that Ho did not explain how Woehrle's experience rendered his particular opinions in this case reliable. See Kumho Tire, 526 U.S. at 150-51 (holding that the Daubert factors may apply to "skill- or experience-based observation" in addition to testimony based on "scientific principles" (quotation omitted)). As in Kumho Tire, the district court "ultimately based its decision upon [an expert's] failure to satisfy either Daubert's factors or any other set of reasonable reliability criteria." Kumho Tire, 526 U.S. at 158. The district court properly applied Rule 702 in so doing.

Second, Ho argues that the district court impermissibly focused on the reliability of Woehrle's conclusions rather than his methods. "[A] trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." Bitler v. A.O. Smith Corp., 400

F.3d 1227, 1233 (10th Cir. 2004). Ho cites several examples of the district court referring to Woehrle's opinions or conclusions as unreliable. However, we read the district court's order as holding Woehrle's conclusions were not reliable because they were not supported by reliable methodology. "Although it is not always a straightforward exercise to disaggregate method and conclusion, when the conclusion simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion." Id. The district court in this case permissibly ruled that there was "simply too great an analytical gap between the data and the opinion proffered." Norris v. Baxter Healthcare Corp., 397 F.3d 878, 886 (10th Cir. 2005) (quotation omitted).

Third, Ho claims that the district court failed to make detailed findings regarding Woehrle's methodology. We have held that a district court must create "a sufficiently developed record in order to allow a determination of whether the district court properly applied the relevant law." Dodge, 328 F.3d at 1223 (quotation omitted). Without such a record, "it is impossible on appeal to determine whether the district court carefully and meticulously reviewed the proffered scientific evidence or simply made an off-the-cuff decision to admit the expert testimony." Goebel v. Denver & Rio Grande W. R.R., 215 F.3d 1083, 1088 (10th Cir. 2000) (quotation and alteration omitted). Ho's assertion that the district court failed to make specific findings rests on the faulty premise that the court reviewed only Woehrle's conclusions rather than his methods. As noted supra, the district court permissibly held that Woehrle did not tie his general experience in the tire

-7-

industry to the specific opinions he advanced in this case. It did so in a thorough and well-reasoned memorandum and order. We have no trouble conducting appellate review of the court's holding.

Fourth, Ho contends the district court erred by issuing its Daubert ruling without conducting a hearing. She relies on our statement in United States v. Nacchio, 555 F.3d 1234 (10th Cir. 2009) (en banc), that "it would be an abuse of discretion for the district court to unreasonably limit the evidence upon which it based its Daubert decision." Id. at 1250. From this statement, Ho claims that a Daubert hearing is required whenever requested. Although we have held that a district court's limitation of Daubert evidence can sometimes "exceed the bounds of permissible choice," our precedent is clear that "a district court has discretion to limit the information upon which it will decide the Daubert issue." Dodge, 328 F.3d at 1228-29; see also Goebel, 215 F.3d at 1087 (noting that a district court is "granted great latitude in deciding whether to hold a formal hearing" (quotation omitted)). "[D]istrict courts are authorized by Fed. R. Civ. P. 78 to provide by local rule for disposition of most motions without oral argument . . . ." Riddle v. Mondragon, 83 F.3d 1197, 1208 (10th Cir 1996). The District of Kansas has such a local rule. See D. Kan. Local R. 7.2. In this case, the district court had before it several expert reports, lengthy deposition transcripts of the experts at issue, and other evidence to accompany the parties' arguments. We conclude the court permissibly exercised its discretion in ruling without a formal hearing.

**B**

In addition to her procedural arguments, Ho claims that the district court abused its discretion in various and sundry manners by excluding Woehrle's testimony. We hold that the district court's decision fell within the bounds of permissible choice.

Ho first claims that the district court abused its discretion by holding that Woehrle could not establish reliability based on his experience. As discussed supra, we reject this characterization of the district court's order. The court clearly noted that "experience may qualify an expert to render an opinion under Rule 702," but held that Woehrle did not tie his opinions to his experience in a meaningful way.

We agree with the district court's characterization of Woehrle's testimony. For example, when asked why he believed that a dog ear of at least a tenth of an inch is significant, Woehrle responded: "My experience at Uniroyal together with other cases that I'd worked on where indeed I've been able to – I've been able to derive a cause-effect relationship between dog-ears and root causes of belt separation failures." Similarly, when asked to support his claim that step-offs can cause belt separation, Woehrle responded that he was "not aware of any publicly published information that supports my claim. I only base it on my experience at Uniroyal and what we dealt with." These responses are typical of the ipse dixit nature of Woehrle's testimony.

We have no quarrel with the proposition that experience may qualify an expert. However, the district court was correct to hold that credentials alone do not suffice. The expert at issue in Kumho Tire, for example, was subject to exclusion despite his

-9-

impeccable qualifications because his methodology was not reliable. 526 U.S. at 153. Ho quotes Bitler, a case in which we held that a fire investigator's methodology was "not susceptible to testing or peer review." 400 F.3d at 1235. But the same is not true of tire-failure investigation. The question of whether dog ears or step-offs lead to belt separation is an empirical one that, as Woehrle acknowledges, has been the subject of published experiments. Yet Woehrle simply referenced his experience in general rather than providing any meaningful explanation as to how he reached his conclusions. Further, as Woehrle acknowledged, the peer-reviewed literature suggests the opposite of his opinions. Given the yawning "analytical gap . . . between premises and conclusion," id. at 1233, we conclude that the district court permissibly rejected Woehrle's reliance on generalized experience.

Second, Ho argues that the district court improperly rejected Woehrle's design defect testimony on the ground that Woehrle was not a tire designer. "[A]s long as an expert stays within the reasonable confines of his subject area, . . . a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight." Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 (10th Cir. 2001) (quotation omitted). Ho argues that tire design was within the reasonable confines of Woehrle's expertise in tire-failure analysis. However, we once again reject Ho's characterization of the district court order.

Although the district court noted Woehrle's concession that he was not qualified to design a tire, this was not the sole basis of its ruling. It further relied in part on the fact

-10-

that Woehrle's design theory has been ruled inadmissible in other cases. See Smith v. Goodyear Tire & Rubber Co., 495 F.3d 224, 227 (5th Cir. 2007); see also Cruz v. Bridgestone/Firestone N. Am. Tire, LLC, 388 F. App'x 803, 807 (10th Cir. 2010) (unpublished). But see Mascarenas v. Cooper Tire & Rubber Co., 643 F. Supp. 2d 1363, 1371-73 (S.D. Ga. 2009) (holding defect theory regarding nylon cap plies admissible). The court also held that "Ho provides no rejoinder to Michelin's specific challenges as to Woehrle's expertise as to her claims of . . . design defect." It ultimately concluded that Woehrle's opinion did not "rest on any attempt to rationally balance" the advantages and disadvantages of a nylon cap ply.

Ho bore the burden of establishing that Woehrle's design defect opinion would be admissible under Rule 702. See Nacchio, 555 F.3d at 1244. Yet, as the district court noted, she failed to explain how Woehrle's general experience in the tire industry qualified him to opine on design issues in both her response to Michelin's motion for summary judgment and her response to Michelin's Daubert motion. The same is true on appeal. Ho simply points to Woehrle's lengthy experience in the tire industry without explaining how that experience supports his opinion that the lack of a nylon cap ply constituted a design defect. Experience is not necessarily a password to admissibility, and neither the district court nor this court will connect the dots on behalf of a litigant. Cf. Bragdon v. Abbott, 524 U.S. 624, 653 (1998) (noting that expert testimony "must have a traceable, analytical basis"). The fact that Woehrle was not qualified to design tires was but one of several factors that led the district court to exclude his design defect

-11-

opinion as unsupported. We discern no abuse of discretion in the court's reasoning.

Third, Ho contends the district court erred in ruling that Woehrle was not qualified to provide opinion testimony regarding defective warning. Ho appears to argue that Woehrle's testimony should have been admitted to bolster her contention that Michelin was liable for a complete failure to warn consumers of the connection between tire age and structural integrity. In his testimony, Woehrle opined that the tire industry in general does a poor job of communicating the effects of tire age. However, Woehrle also testified that he did not consider "age to be applicable" to the tire failure at issue, and that he was "not offering opinions in this case concerning warnings or the effectiveness of warnings." We conclude that any claimed error would be harmless under these circumstances. Cf. United States v. Lewis, 240 F.3d 866, 869 (10th Cir. 2001) (noting that exclusion of expert testimony is subject to harmless error analysis).

In Ho's fourth substantive attack on the district court's decision, she argues that the court erred in excluding the results of Woehrle's impact testing of a single tire. The district court provided several reasons for rejecting this evidence: drop tests are less reliable than pendulum tests according to the document upon which Woehrle relied; the test lacked a measured error rate; Woehrle's opinion was not supported by peer-reviewed evidence or even extensive testing; and Woerhle's claim that impacts do not cause belt detachment is contrary to the generally accepted engineering literature. Each of these factors was permissibly considered. See Dodge, 328 F.3d at 1222. And the court's desire for rigorous testing was appropriate given that Woehrle sought to challenge the

-12-

scientific consensus. See Bitler, 400 F.3d at 1235-36 ("When an expert proposes a theory that modifies otherwise well-established knowledge about regularly occurring phenomenon, . . . we would expect the importance of testing as a factor in determining reliability to be at its highest."). We hold that the district court's decision to exclude Woehrle's drop testing fell within its discretion.

Finally, Ho argues that the district court's ruling was flawed because tactile and visual inspection is an acceptable methodology. She relies on Kumho Tire, in which the Court stated that this methodology is well-recognized among tire experts. See 526 U.S. at 156. However, as in Kumho Tire, "the specific issue before the court was not the reasonableness in general of a tire expert's use of a visual and tactile inspection." Id. at 153 (emphasis omitted). Instead the question presented to the district court "was the reasonableness of using such an approach, along with [the expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant." Id. at 154 (emphasis omitted). The district court did not hold that tactile and visual inspection was problematic. Instead, it concluded that "too great an analytical gap," Norris, 397 F.3d at 886, existed between Woehrle's unsupported theories regarding potential causes of belt separation and his underlying data. We affirm that conclusion.

## III

Ho also argues that the district court erred in granting summary judgment following the exclusion of Woehrle's proposed testimony. We review de novo a district

court's grant of summary judgment. Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1179 (10th Cir. 2009). Summary judgment is proper only if, viewing the evidence in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. Id.

Having concluded that Woehrle's proposed testimony was properly excluded, Ho's claim that the Daubert ruling tainted the summary judgment ruling necessarily fails. But Ho advances four additional arguments that summary judgment was improper even without Woehrle's testimony.

First, Ho claims that the district court erred by allowing Michelin to file a summary judgment brief that referenced a forthcoming Daubert motion. Based on the ordering of these motions, Ho contends she was deprived the right to respond adequately to the summary judgment motion. Under Federal Rule of Civil Procedure 56, a party must "be given notice and a reasonable opportunity to respond to the movant's summary judgment materials." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1164 (10th Cir. 1998). Ho was given that opportunity here; she filed complete responses to Michelin's motion for summary judgment and its Daubert motion. The order of Michelin's motions was consistent with the applicable scheduling order, to which Ho did not object. She now argues that Michelin's summary judgment reply brief unfairly incorporated its Daubert brief, but we do not see any new line of argument injected at the reply stage. Accordingly, we deny relief on this issue.

Second, Ho argues the district court erred in ruling that her products liability claim

-14-

required expert testimony. She cites a District of Kansas case explaining that "the elements of a product liability claim may be proven inferentially, by either direct or circumstantial evidence." Samarah v. Danek Med., Inc., 70 F. Supp. 2d 1196, 1202 (D. Kan. 1999) (quotation omitted). "If plaintiff seeks to prove his claim via circumstantial evidence, that evidence must tend to negate other reasonable causes, or there must be an expert opinion that the product was defective." Id. (quotation omitted).

Although Samarah accurately describes the general rule that circumstantial evidence may be used in a products liability action, "the well-established test for determining whether expert testimony is required" under Kansas law is "whether the subject matter is too complex to fall within the common knowledge of the jury and is beyond the capability of a lay person to decide." Williamson v. Amrani, 152 P.3d 60, 72 (Kan. 2007) (quotation omitted). In particular, the question before the district court was whether "the trier of fact would be able to understand, absent expert testimony, the nature of the standard of care required of defendant and the alleged deviation from the standard." Gaumer v. Rossville Truck & Tractor Co., 202 P.3d 81, 84 (Kan. Ct. App. 2009). We agree with the district court that the highly technical nature of tire design and tire-failure analysis is well outside the ken of a jury, and thus expert testimony was required to establish the standard of care.

Third, Ho contends the testimony of Cassidy, when coupled with that of an accident scene investigator, created a genuine dispute of material fact as to whether the tire suffered adhesion failure. She notes Cassidy's statement that the age of a tire is a

-15-

"serious factor" and an investigator's testimony that the tire did not appear to be worn out. Even if Ho could rely on circumstantial evidence to establish her adhesion failure claim, "that evidence must tend to negate other reasonable causes." Samarah, 70 F. Supp. 2d at 1202 (quotation omitted). Cassidy testified that there were multiple potential causes of tire failure, some unrelated to defects including over-deflection and road impacts. He also stated that he "would not testify that this tire failed because of age."[1] Because the proffered evidence does not tend to negate other reasonable causes of the tire's failure, we conclude that Ho failed to create a genuine fact issue as to adhesion failure.

Finally, Ho argues that the district court erred in dismissing her failure to warn claim. She contends that Michelin failed to warn consumers that age can affect the structural integrity of a tire, and that the lack of a warnings expert was immaterial given the complete failure to warn. We agree with the district court that this claim was subject to summary judgment because there was no evidence that age caused this tire failure. As noted above, Cassidy testified that that age was a factor, but could not claim that the tire

---

[1] Ho argues that we should not consider this evidence because it was "not addressed in the summary judgment briefing." However, Michelin stated in its motion for summary judgment that it was relying on excerpts of Cassidy's deposition, which were presented to the district court as an attachment. See Feichko v. Denver & Rio Grande W. R.R., 213 F.3d 586, 592 n.5 (10th Cir. 2000) ("In reviewing a grant of summary judgment, our inquiry is limited to the summary judgment record before the district court when the motion was decided."). Ho does not point us to any authority suggesting that we are barred from looking to the full context of a witness' statements when evaluating an incomplete quotation.

failed because of age. And Woehrle testified that he did not consider age to be an "applicable" concern for the tire at issue. Accordingly, Ho failed to present evidence sufficient to establish that her "injury resulted from a condition of the product," an element of her failure to warn claim. See Jenkins v. Amchem Prods., Inc., 886 P.2d 869, 886 (Kan. 1994) (quotation omitted).

**IV**

    **AFFIRMED**.

                           Entered for the Court

                           Carlos F. Lucero
                           Circuit Judge