ACCEPTED
04-14-00620-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/23/2015 11:52:30 AM
KEITH HOTTLE
CLERK

**NO. 04-14-00620-CV**

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

02/23/2015 11:52:30 AM
KEITH E. HOTTLE
Clerk

**IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO, TEXAS**

**ROSA OBREGON PEREZ, ET AL**

**Appellants**

**v.**

**THE GOODYEAR TIRE & RUBBER COMPANY**

**Appellee**

**AMENDED BRIEF OF APPELLEE
THE GOODYEAR TIRE & RUBBER COMPANY**

J. Michael Myers
State Bar Number 14760800
James M. "Jamie" Parker, Jr.
State Bar Number 15488710
NAMAN HOWELL SMITH & LEE, PLLC
Union Square II
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 731-6364
Fax (210) 785-2964
Email: jparker@namanhowell.com
**ATTORNEYS FOR APPELLEE
THE GOODYEAR TIRE & RUBBER
COMPANY**

{03222971.DOCX / }

## Identity of Parties and Counsel

**Appellants:** Rosa Obregon Perez (wife of decedent); Ricardo O. Perez (adult son), Rosa Elia Perez (adult daughter), Maria Perez Jalomus (adult daughter; Juan Jose Perez (adult son); Julio Perez (adult son) and Fernando Perez (adult son)

**Appellant's Counsel:** William G. Neumann, Jr.
Hagood & Neumann
1520 E. Highway 6
Alvin, Texas 77511
281-331-5757
281-331-1105 (fax)

**Appellee:** The Goodyear Tire & Rubber Company

**Appellee's Counsel:** J. Michael Myers
James M. "Jamie" Parker, Jr.
NAMAN HOWELL SMITH & LEE, PLLC
Union Square II
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 731-6364
Fax (210) 785-2964
Email: jparker@namanhowell.com

**Former Parties in the trial court but not to this appeal:** Hermann Richter, Medical Transport of Texas, Inc. Orlando Garcia, Ford Motor Company

## Record References

Appellee will refer to the Clerk's initial record as "(CR. ___)," the First Supplemental Clerk's Record as "(CR1 ___)", the Second Supplemental Clerk's Record as "(CR2 ___)", to the sealed record as "(SR___)" and to the Supplemental Sealed record as ("SSR ___").

# Table of Contents

**Page**

Identity of Parties and Counsel ...................................................................... ii

Index of Authorities .................................................................................... vi

Statement of the Case ................................................................................. viii

Response to the Issues Presented ..................................................................... x

Statement of Facts ......................................................................................... 1

Summary of Argument .................................................................................... 5

Argument ...................................................................................................... 6

Response Point 1 ........................................................................................... 6

The court should carefully examine the orders entered by the trial court to determine whether or not it has jurisdiction to reach Appellants' claims here.

Response Point 2 .......................................................................................... 9

The Standard of Review in this case requires a two-fold analysis: abuse of discretion standard to assess the exclusion of Woehrle as an expert, then review of the summary judgments themselves.

Response Point 3 ........................................................................................ 11

The trial court did not abuse its discretion in excluding Woehrle, as he was unqualified to provide the testimony he sought to provide, used unsupported methodology, based his opinions on incorrect factual premises, and has been excluded for espousing the same opinions he attempted to foist on the trial court here.

Response Point 4 ...................................................................

A review of the *Robinson* factors along with the analytical gap problems show that the trial court did not abuse its discretion in excluding Woehrle.

Response Point 5 ........................................................... 27

Having correctly exercised its discretion in excluding Woehrle, the summary judgments in favor of Goodyear were also proper, as Plaintiffs had no other evidence of a defect in the tire in question which could support any of their design, manufacturing or marketing claims.

Response Point 6 ........................................................... 29

Summary judgment was proper even if Woehrle had not been excluded as his testimony cannot meet the standard under Texas law for showing that either a manufacturing or design defect existed, much less a marketing defect.

Response Point 7 ........................................................... 32

Appellant's statements and arguments about Goodyear's experiences with other Load Range E tires is contrary to the actual testimony in the case, and, in any event, does not create a fact issue as to this tire.

Prayer.............................................................................35

Certificate of Compliance .......................................................36

Certificate of Service.............................................................36

## Index of Authorities

**Federal Cases**                                                    **Pages**

*Kumho Tire Co. Ltd v. Carmichael,*
526 U.S. 137, 119 S. Ct. 1167 (1999)...............................................................25

*Casey v. Toyota Motor Engineering Mgf Co North* America,
770 F. 3d 322 (Fifth Cir. 2014)....................................................................30

*Green v. R.J. Reynolds Tobacco Co.,* 274 F.3d 263,
(5th Cir.2001)..............................................................................................31

*Hodges v. Mack Trucks, Inc.,*
474 F.3d 188  (5th Cir.2006))......................................................................30

*Melinda Ho v. Michelin North America, Inc.,*
2011 WL 3241466 (D. Kan. 2011)...............................17, 18, 20, 21, 31

*Melinda Ho v. Michelin North America, Inc.,*
520 Fed. Appx. 658 (10th Cir. 2013) ...............................18, 21, 31

*Smith v. Goodyear Tire & Rubber,*
495 F.3d. 224 (5th Cir. 2007)........................................................................17


**Texas Cases**

*Brandon v. American Sterilizer Co.,*
880 S.W.2d 488 (Tex. App. – Austin 1994, no pet.). ................................ 27

*Cooper Tire & Rubber Co. v. Mendez,*
204 S.W.3d 797 (Tex.2006)...................................................11, 25, 27, 28

*E.I DuPont de Nemours & Co. v. Robinson,*
923 S.W.2d 549 (Tex. 1995)......................................................... 11, 14, 25

*Ford Motor Co. v. Ledesma,*
242 S.W.3d. 32 (Tex. 2007)...........................................................................32

*Ford Motor Co. v. Ridgway,*
135 S.W.3d 598 (Tex. 2004)...................................................................10, 28

*Gammill v. Jack Williams Chevrolet, Inc.,*
972 S.W.2d 713 (Tex.1998)..................................................................9,12

*Goodyear v. Rios,*
143 S.W.3d 107 (Tex. App. – San Antonio 2004, pet. den.)........................25

*Helena Chem. Co. v.Wilkins,*
47 S.W.3d 486 (Tex. 2001).................................................................12

*Heritage Manor, Inc. v. Tidball,*
724 S.W.2d 952 (Tex. App. – San Antonio 1987, no pet) .........................27

*King Ranch, Inc. v. Chapman,*
118 S.W.3d 742 (Tex.2003)...............................................................10

*Mack Trucks, Inc. v. Tamez,*
206 S.W.3d 572 (Tex.2006) ...............................................................12

*Merrell Dow Pharms. Inc. v. Havner,*
953 S.W.2d 706 (Tex. 1997)...............................................................24

*Provident Life & Acc. Ins. Co. v. Knott,*
128 S.W.3d 211 (Tex.2003) ...............................................................10

*Strandberg v. Spectrum Office Bldg.,*
293 S.W.3d 736 (Tex.App.–San Antonio 2009, no pet.)...........................10

*Quanaim v. Frasco Restaurant & Catering,*
17 S.W.3d 30 (Tex.App.-Houston [14th Dist.] 2000, pet. denied)................6,7

*Vause v. Liberty Ins. Co.,* --- S.W.3d ---, 2014 WL 6687598
(Tex. App.–San Antonio, November 26, 2014, n.p.h.).............................10

*Volkswagen of America, Inc. v. Ramirez,*
195 S.W.3d 897 (Tex. 2004)...............................................................19

{03222971.DOCX / }

*Whirlpool Corp. v. Camacho,*
298 S.W.3d 631 (Tex.2009)...............................................................9, 12

**Texas Statutes**                                                    **Page**

Tex. Civ. Prac. & Rem.Code Ann. § 82.005(b)(1)...........................29

# Statement of the Case

**Nature of Underlying proceeding:** This case arises from a single vehicle rollover accident in which the 71-year old decedent was killed when returning from his thrice-weekly dialysis. Appellants brought suit against several defendants raising negligence and product liability claims. Appellants resolved their issues with the other Defendants and proceeded solely against Appellee, The Goodyear Tire & Rubber Company.

**Trial Court:** 83rd District Court of Val Verde County, the Honorable Robert E. Cadena, Presiding

**Orders appealed from:** After pending 8 years in the trial court, new appointee Judge Cadena entered an order excluding Appellants' sole expert on product defect under Goodyear's *Daubert/Robinson* challenge, and thereafter granted Goodyear summary judgment on all issues in two partial summary judgment orders. The court later entered a "final judgment" in favor of Goodyear.

# STATEMENT REGARDING ORAL ARGUMENT

Goodyear believes that the jurisdictional issues can be decided without oral argument, as the critical facts on those issues cannot be in dispute under the record before the Court. Goodyear agrees that if the Court reaches the merits of the appeal, oral argument would assist the Court in resolving the underlying issues.

## Response to the Issues Presented

**Response Point 1:**  The court should carefully examine the orders entered by the trial court to determine whether or not it has jurisdiction to reach Appellants' claims here.

**Response Point 2:**  The Standard of Review in this case requires a two-fold analysis: abuse of discretion standard to assess the exclusion of Woehrle as an expert, then review of the summary judgments themselves.

**Response Point 3:**  The trial court did not abuse its discretion in excluding Woehrle, as he was unqualified to provide the testimony he sought to provide, used unsupported methodology, based his opinions on incorrect factual premises, and has been excluded for espousing the same opinions he attempted to foist on the trial court here.

**Response Point 4:**  A review of the *Robinson* factors along with the analytical gap problems show that the trial court did not abuse its discretion in excluding Woehrle.

**Response Point 5:**  Having correctly exercised its discretion in excluding Woehrle, the summary judgments in favor of Goodyear were also proper, as Plaintiffs had no other evidence of a defect in the tire in question which could support any of their design, manufacturing or marketing claims.

**Response Point 6:**  Summary judgment was proper even if Woehrle had not been excluded as his testimony cannot meet the standard under Texas law for showing that either a manufacturing or design defect existed, much less an marketing defect.

**Response Point 7:**  Appellant's statements and arguments about Goodyear's experiences with other Load Range E tires is contrary to the actual testimony in the case, and, in any event, does not create a fact issue as to this tire.

## STATEMENT OF FACTS

This case arises out of a tire disablement that occurred on or about February 14, 2006. Herman Richter was driving a 1998 Ford E-350 vehicle which had been converted into an ambulance, and was being operated on behalf of Medical Transport of South Texas, Inc. The ambulance, which was not on an emergency run, was transporting Mr. Julio Perez, age 71, for one of his dialysis treatments that he received three times a week. A light truck Load Range E tire mounted on the left rear wheel position of the ambulance became disabled through a tread/belt separation. The vehicle ultimately rolled over, and Mr. Perez passed away at the scene of the accident.

The Appellants, who are the surviving spouse and adult children of Mr. Perez, brought this lawsuit in March 2006 against Richter, Medical Transport of Texas and its owner (Orlando Garcia), Ford Motor Company and Goodyear. (CR 0016). The defendants answered, and written discovery was exchanged between the parties (CR 0075). Goodyear moved for a protective order relating to some written discovery (CR 0099), including filing several affidavits relating to the tire in question. (CR 0138, 0171, 0656, 0786, 0853). Plaintiffs responded by filing the affidavit of a purported tire expert, Dennis Carlson, in support of their request for documents. Goodyear objected to Carlson's involvement with its trade secret documents due to Carlson's well-documented failure to abide by previous protective orders. (CR 0184).

The trial court agreed with Goodyear, and entered a protective order in March 2008 barring Carlson from having access to Goodyear privileged documents (CR 0765).

In 2010, Plaintiffs resolved their claims against the other defendants, sought and were granted non-suits against all defendants other than Goodyear (CR 1206, 1210, 1212, 1215). In January 2011, the trial court adopted the parties' Rule 11 discovery and docket control order, which provided for plaintiffs' testifying experts to be designated by September 1, 2011, their final pleadings to be filed by January 16, 2012, and all discovery to be completed by February 17, 2012. (CR 1216). Pursuant to the docket control order entered by the trial court, Plaintiffs designated their expert witnesses on September 1, 2011. The only expert witness that they designated with regard to the tire was William Woehrle, who was ostensibly retained to testify about design, manufacturing and marketing issues.

Plaintiffs filed no amended petition prior to the pleading deadline, and therefore their live pleading was their Eighth Amended Original petition of July 2009 (CR 1590).[1] The claims contained in the live pleading before the trial court were that Goodyear: (1) failed to properly design the tire in question (2) failed to properly manufacture the tire in question; (3) failed to properly warn that tires six years or older should not be used regardless of tread life; (4) failed to properly design the tire in question to include nylon overlays on the tire; (5) failed to warn

---

[1] Plaintiffs attempted to file a Ninth Amended Original Petition, but the request for leave to file an amended pleading was denied (CR 3184). Appellants have not raised specific error from this denial.

that tires six (6) years old or older should not be used regardless of tread life; and (6) failed to properly warn that the subject tire did not have nylon overlays and was at a high risk for tread separation. (CR 1592-93).

Goodyear filed its motion to exclude Woehrle on December 28, 2011, which was within the deadlines established by the scheduling order. (CR 1219).[2] Goodyear thereafter filed a no evidence motion for summary judgment on each of the liability theories contained in Plaintiffs' live pleadings. (CR 1583). Plaintiffs likewise moved to exclude several of Goodyear's experts on various grounds, leading to the filing of Goodyear's own expert affidavits. (CR 1676, 1718). Over the next three years,[3] the parties filed numerous supplements, responses, replies and objections relating to the pending motions to exclude and motions for summary judgment. (*see e.g.* CR 1671, 1675, 2576, 2577, 2594, 2638, 2640, 2646, 2647, 2648).

In August 2013, Goodyear filed a second no evidence motion for summary judgment, primarily on the plaintiff's "marketing defect" claims. (CR 2649). This also brought a number of responses, replies and supplements before the trial court (*see e.g.* CR 2714, 2715, 2716, 3318, 3333, 3373, 3419, 3489). Two lengthy hearings were held before the trial court regarding the pending motions.

---

[2] Goodyear also moved to strike several other witnesses, but those motions were not ruled on by the trial court, likely because the ultimate rulings on the other motions made them moot. (CR 1389, 1459)

[3] The lengthy process in the trial court was in part due to the disruption caused by the unfortunate illness and ultimate passing of Judge Carl Pendergrass, and the subsequent appointment of his successor, Judge Robert Cadena.

3

On May 7, 2014, Judge Cadena granted Goodyear's motion to exclude the testimony of William Woehrle (CR 3603). The order is global and does not specify the exact grounds for his exclusion. On June 3, 2014, the trial court granted a partial no evidence motion for summary judgment to Goodyear on all alleged manufacturing defects and negligent manufacturing claims, as well as "all claims based upon tire aging and the failure to warn about the age of the tire," (CR 3604). On July 11, 2014, the trial court entered a second summary judgment order for Goodyear as to all design defect claims (CR 3606).

The trial court thereafter entered a "final judgment" on July 31, 2014 (CR 3607). The final judgment specifically references the previously granted partial summary judgments of June 2 and July 11, 2014. (CR 3613). The trial court further noted "that those two orders, collectively, dispose of all claims and parties before the Court..." (CR 3613).

Appellants filed their notice of appeal in this case on September 2, 2014 (CR 3610)

{03222971.DOCX / }

## SUMMARY OF ARGUMENT

At the time of the rulings in this case, the case had been pending for more than eight years in the trial court and all deadlines in the trial court's docket control order had long since passed, including those related to both pleadings and discovery. It was with that backdrop that the trial court assessed William Woehrle's qualifications and proposed testimony as an expert, and found them wanting. Even assuming this Court has jurisdiction over the appeal, and regardless of the precise standard used to assess the reliability of Woehrle's proposed testimony, the decision to exclude him was undoubtedly a discretionary decision by the trial court. As Goodyear proved – and Woehrle repeatedly admitted -- that he was not an expert in the very areas upon which his testimony was sought, Appellants simply cannot show an abuse of discretion in the trial court's decision to exclude Woehrle. Likewise, although the issue in the appeal of a summary judgment is an evidentiary one, without expert testimony supporting their design, manufacturing or marketing defect claims, the trial court did not err in granting the summary judgments on each of those issues in favor of Goodyear.

{03222971.DOCX / }

## ARGUMENT

**Response Point 1:** **The court should carefully examine the orders entered by the trial court to determine whether or not it has jurisdiction to reach Appellants' claims here.**

Goodyear is concerned as to whether this Court has jurisdiction over the appeal due to the trial court's method of issuing separate orders addressing the motions for summary judgment.

Specifically, in its 'Final Judgment" order of July 31, 2014, the trial court noted that it had previously granted two partial summary judgments on June 2 and July 11, 2014. (CR 3613). The trial court further noted "that those two orders, collectively, dispose of all claims and parties before the Court..." (CR 3613). This necessarily means that although the trial court thereafter entered the document entitled "Final Judgment," it was not addressing any additional matters which were pending, because the previous two orders had already "disposed of" all parties and claims. So, in essence, the "Final Judgment" of July 31 was like a second judgment which ostensibly attempts to dispose of all parties and claims when a previous judgment has already effectively done so. Such a second judgment is void. *See Quanaim v. Frasco Restaurant & Catering,* 17 S.W.3d 30, 37-39 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

The *Quanaim* court correctly notes that where the trial court somehow modifies a previous otherwise final order it already entered, then the appellate

6

timetable begins from the second order rather than the first. On the other hand, "where there are two final judgments in a case, only one can survive." *Quanaim* at 37. The *Quanaim* court involved a situation –like here – where an interlocutory partial summary judgment order was followed by a second partial summary judgment order that effectively disposed of all parties and claims. *See Quanaim* at 36-37 ("Upon the signing of the trial court's May 11 order, there remained nothing for the court to adjudicate. Therefore the May 11 order was a final judgment."). However, after that order was signed, the *Quanaim* trial court issued a new order changing the basis for its summary judgment ruling. *Id.*

Addressing the jurisdictional issues, the Fourteenth Court of Appeals noted that the trial court's order had been changed in a way which "inferred or presumed" an intent of the trial court to modify its previous ruling, which would restart the appellate timetable. *Id.* On that basis only, the court allowed the appeal to continue.

Unlike *Quanaim*, however, there was no change whatsoever to the previous orders here. To the contrary, the trial court here specifically ruled that his previous orders had collectively already disposed of all parties and claims. There was also no post-judgment motion filed after the second summary judgment order of July 11 which would otherwise have somehow extended the appellate deadlines.

7

The September 3, 2014 notice of appeal here was filed within 30 days of the "Final Judgment" of July 31, 2014 under the rules. (CR 3610). It was not, however, filed within 30 or even 45 days of the July 11, 2014 ruling of the trial court (which would have been no later than August 25, 2014). (CR 3610). Thus, if the Court concludes that the July 11 ruling -- which according to the trial court actually disposed of all parties and claims – was the final judgment, this court is without jurisdiction to consider this appeal.

Counsel agrees that appeals should be addressed on their merits rather than on procedural issues, as has been repeatedly stressed in both the Appellate Rules, and by the Supreme Court. As officers of the Court, however, the jurisdictional question is not one that can simply be ignored, which is why it is pointed out. That having been said, Goodyear would prefer to prevail – as it should – on the merits for the reasons set forth below.

{03222971.DOCX / }

**Response Point 2:** **The Standard of Review in this case requires a two-fold analysis: abuse of discretion standard to assess the exclusion of Woehrle as an expert, then review of the summary judgments themselves.**

As noted above, the rulings in Goodyear's favor came in stages here. The trial court first excluded Plaintiff's sole tire expert at the time of trial, William Woehrle. (CR 3603). The court then granted Goodyear's no evidence motion for summary judgment on manufacturing and marketing issues (CR 3604). Finally, the court granted Goodyear's no evidence motion for summary judgment as to design issues (CR 3606). Although the orders are interrelated, the standards of review are different.

This Court reviews a trial court's ruling on a motion to exclude an expert witness under an abuse of discretion standard. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718–19 (Tex.1998); *Camacho v. Whirlpool*, 298 S.W.3d 631, 638 (Tex. 2008). The Supreme Court has repeatedly pointed out that the appellate courts will not reverse a trial court's judgment even if it would have held differently, or even if the trial court made an error in judgment. *Gammill* at 531–32. Instead, this Court may only reverse if the trial court acted *without reference to **any** guiding rules or principles*. *Id.* at 532 (emphasis added). Thus, a trial court enjoys wide latitude in determining whether expert testimony is admissible. *Id.*

9

On the other hand, when considering the motions for summary judgment granted in favor of Goodyear, this Court has noted that it will review the grant of summary judgment, both traditional and no-evidence, de novo. *Vause v. Liberty Ins. Co.*, --- S.W.3d --, 2014 WL 6687598 at *2 (Tex. App. – San Antonio, November 26, 2014, n.p.h.), *citing Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003) and *Strandberg v. Spectrum Office Bldg.*, 293 S.W.3d 736, 738 (Tex.App.–San Antonio 2009, no pet.). Goodyear was entitled to a no-evidence summary judgment if, "[a]fter adequate time for discovery, ... there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." *See Vause at*2, citing* Tex.R. Civ. P. 166a(i). As this Court said:

> The trial court "must grant" the motion unless the non-movant produces summary judgment evidence to raise a genuine issue of material fact on the issues the movant has raised. Tex.R. Civ. P. 166a(i). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003).

*See Vause* at *2.

Put simply, the trial court properly exercised its discretion in excluding Woehrle as an expert, and plaintiffs cannot show the decision was without reference to *any* guiding principles. Having correctly excluded the plaintiffs' sole

{03222971.DOCX / }

liability expert, the trial court thereafter properly granted summary judgment, as plaintiffs produced no evidence of either a product defect or causation of the supposed accident under the no evidence standard.

> **Response Point 3:** The trial court did not abuse its discretion in excluding Woehrle, as he was unqualified to provide the testimony he sought to provide, used unsupported methodology, based his opinions on incorrect factual premises, and has been excluded for espousing the same opinions he attempted to foist on the trial court here.

This is not William Woehrle's first rodeo in a tire case. It is also not his first time to be excluded over his "pet theory" regarding the use of nylon overlays on tires. The trial court could have used any number of reasons to exclude his testimony under the facts, and it clearly was not an abuse of discretion to do so.

A. *Standard for Expert Testimony*

Texas Rule of Evidence 702 governs the admissibility of expert testimony. Expert testimony is admissible if (1) the expert is qualified and (2) the testimony is relevant and based on a reliable foundation. *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex.2006). Once Goodyear objected to Woehrle's testimony, it was Appellants' burden to prove that the evidence is admissible. *E.I DuPont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995). "When expert testimony is involved, courts are to **rigorously** examine the validity of facts and assumptions on which the testimony is based, as well as the principles, research, and methodology underlying the expert's conclusions and the manner in

11

which the principles and methodologies are applied by the expert to reach the conclusions." *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex.2009)(emphasis added). In determining whether expert testimony is reliable, a court may consider the non-exclusive factors set forth in *Robinson. Whirlpool Corp.*, 298 S.W.3d at 638. The *Robinson* factors may not apply when testimony is not scientific, but, rather, involves technical or other specialized knowledge. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex.2006) (*citing Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex.1998)). However, there must still be some basis for the opinion offered to show its reliability, and the trial court must determine how to assess reliability. *Helena Chem. Co.*, 47 S.W.3d at 499 (*citing Gammill*, 972 S.W.2d at 726). In short, there cannot be "'too great an analytical gap between the data and the opinion proffered.'" *Gammill*, 972 S.W.2d at 726.

The Supreme Court's handling of the expert in *Whirlpool* is instructive here. The court noted that "[w]itnesses offered as experts in an area or subject will invariably have experience in that field. If courts merely accept "experience" as a substitute for proof that an expert's opinions are reliable and then only examine the testimony for analytical gaps in the expert's logic and opinions, an expert can effectively insulate his or her conclusions from meaningful review by filling gaps in the testimony with almost any type of data or subjective opinions." *Whirlpool* at

12

*639, citing Gammill*, 972 S.W.2d at 722. Although some subjects might not fit neatly within the realm of "scientific" testimony such that the *Robinson* factors directly apply, such does not mean that those factors should be ignored in favor of the "analytical gap" analysis. *See Whirlpool* at 639-40. Rather, where scientific testing forms the basis of at least some part of the expert's analysis, the *Robinson* reliability factors – such as the extent to which a theory and its parts have been or could be subjected to testing and the nature of peer review of the opinions -- still should be considered along side the analytical gap analysis. *See Id.* Like Whirlpool, the present case:

> is not one of the few cases in which appellate review of expert evidence should be limited to either an analysis focused solely on Robinson-like factors or solely on an analytical gap test. We agree … that proper appellate legal sufficiency review…requires evaluating [the expert's] testimony by considering both *Robinson*-type factors and examining for analytical gaps in his testimony."

*See Whirlpool* at 640. So this court should examine each of the *Robinson* factors, as well as the analytical gap issues in order to come to its conclusions in this case.

In their brief, Appellants provide pages upon pages of purported facts (without reference to the record) and argument which they believe show that their expert was qualified, used the proper methodology, "filled" the analytical gap, etc., etc. This is, however, no different than urging that the trial judge made a mistake in weighing the evidence in favor of and against their expert. Their burden is

13

heavier than that. They must essentially show that based upon this record, the trial court *could only* have found Woehrle to be a qualified witness and his opinions on each of the key issues to be reliable. Anything else would simply be inviting this Court to substitute its judgment for the trial judge's on the reliability issue, which is not the proper standard. With that distinction in mind, the trial court clearly had sufficient information to exclude Woehrle.

B.    *The trial court could have reasonably concluded that Woehrle was not qualified to give the testimony sought by Plaintiffs*

First, it is not as if Mr. Woehrle is some happy-go-lucky scientist who happened to be hired as an expert witness. In fact, he is just the kind of witness that the Supreme Court has repeatedly warned about: one who travels around the country providing expert witness testimony in tire cases, i.e. a "hired gun." *See Gammill at 725* ("Whether the expert would opine on economic valuation, advertising, psychology, or engineering, application of the *Daubert* factors is germane to evaluating whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers."); *E.I. DuPont de Nemours v. Robinson*, 923 S.W.2d 549, 553 (Tex. 1995)(warning of experts who are "more than willing to proffer opinions of dubious value for the proper fee"). That being the case, it was perfectly within the trial court's discretion to conclude that Woehrle's qualifications to give the

testimony in this case generally and specifically regarding his opinions in this case were lacking.

For example, Woehrle has never designed or manufactured a steel belted radial tire like the one involved in this case (CR 1295-96)(*Goodwill* transcript at page 14, l. 6-7), and has repeatedly testified that he would not hire himself to design **or** manufacture a steel belted radial tire (CR 1295-97)(*Goodwill* trial transcript at p. 15, l. 11-16; p. 19, l. 22 -24). He is not a professional licensed engineer, has previously testified that he does not consider himself to be an expert in regard to tire manufacturing (CR 1346)(*Gotthelf* deposition at p. 51, l. 14 – 17), and that he is not a tire design engineer (CR 1295-96)(*Goodwill* trial transcript at p. 14, l. 25 – p. 15, l. 2). So, right off the bat, the trial court was faced with an expert who was to testify on design and manufacturing issues who had never designed or been involved in the manufacture of such a tire and who agreed as to his own lack of expertise in those areas. Those factors alone could have supported the trial court's rejection of Woehrle as an expert in the case.

Even if his general lack of qualifications did not doom him, the Court should remember that the claims in Plaintiffs' live pleading were fairly specific on what the defect in the tire was claimed to be: (1) the tire did not have a nylon overlay and was therefore defective in design, manufacturing and marketing; and (2) there was no warning about using a tire more than six years old regardless of its tread wear. There

15

is more than a scintilla of evidence showing that Woehrle was properly excluded on both of these issues by the trial court.

1. Woehrle was not qualified to testify regarding nylon overlays, and failed to fill the analytical gap between his theories and this tire

According to the report and testimony of Mr. Woehrle, the absence of a nylon overlay is the alleged design defect in the subject steel belted radial tire. Of course, Mr. Woehrle has never designed a nylon overlay for a steel belted radial tire (CR 1311) (*Maria Pina, et al. v. Bridgestone/Firestone* deposition dated May 18, 2009 at p. 161, l. 20 -22). He holds no patents of nylon overlays (CR 1294) (*Goodwill* trial transcript at 13, line 20). He has not published any scientific reliable peer reviewed literature that addresses the design or manufacture of nylon overlays. (CR 1348) (*Gotthelf* deposition at p. 64). Woehrle has not published any peer reviewed literature that addresses the uses or benefits of nylon overlays (CR 1348) (*Gotthelf* deposition at p. 64). He is not aware of any scientific reliable peer reviewed publication that says that the absence of a nylon overlay is a design defect (CR 1351) (*Gotthelf* deposition at p. 159, l. 2-9). He never specified a nylon overlay for use in a steel belted radial tire (CR 1352) (*Gotthelf* deposition at p. 195, l. 15-17). Moreover, he has never done any comparison testing on a Wrangler HT 245/75R16 tire with and without an nylon overlay. (SR2097)(Perez deposition at p. 122, l. 6-9). He has agreed under oath that there is no publication anywhere that states that tires must have nylon overlays to be adequate or non-defective (CR 1350) (*Gotthelf* deposition

16

at p. 152, l. 25 – p. 153, l. 3). He has admitted that use of nylon overlays can cause adverse effects on the rolling resistance of a tire, affect fuel economy, add weight to a tire and create a flat spotting problem (CR 1350) (*Gotthelf* deposition at p. 151 -152). He also testified in the *Ho v. Michelin* case that nylon overlays can cause issues regarding "passenger discomfort" and "costs". *See Melinda Ho v. Michelin North America, Inc.*, 2011 WL 3241466 *6 (D. Kan. 2011).[4] In fact, Woehrle has testified that just because a tire does not have a nylon overlay does not mean that the tire is defective. (CR 2844)(*Goodwill* testimony at p. 27, l. 16).

If all of the above is not sufficient to show that the trial court had *some* reasonable basis for excluding Woehrle, this Court need only look at the district and appellate opinions in the *Ho* case. In *Ho* the district court found:

> Woehrle has also never designed a steel-belted radial tire, or any tire that has ever been placed in production (citation omitted). He has stated that he is not a qualified tire designer and would not hire himself to design a tire (*Id.* at 64). Given these admissions, Woehrle is not qualified to give testimony as to the claims of defective… design…
> Woehrle acknowledges in his deposition that nylon cap plies are simply one alternative available to tire designers to compensate for belt edge stress, and that nylon cap plies have significant disadvantages, including rolling resistance, flat spotting, passenger discomfort, fuel inefficiency, and cost. As noted earlier, Woehrle is not a tire designer, and his opinion does not rest on any attempt to rationally balance these competing values. Other courts have rejected under *Daubert* proposed expert testimony advancing the nylon theory. See *Smith v. Goodyear Tire & Rubber*, 495 F.3d. 224, 227 (5th Cir. 2007); *Vigil v. Michelin N.*

---

[4] Appellants' specific agreement that this Court's examination of the issues should be guided by federal *Daubert* law makes the federal district court rulings in the *Ho* case even more persuasive than it might otherwise be. *See Appellant's Brief* at 8 (noting that Texas Rules 702 and 703 are based on the same federal rules "thus, case law construing the federal rules is instructive.").

{03222971.DOCX / }

*Am., Inc.,* 2007 U.S. Dist. LEXIS 72785 at 17-18 (W.D. Tex. August 24, 2007).

*See Melinda Ho v. Michelin North America, Inc.,* 2011 WL 3241466 at *6 (D. Kan. 2011). On appeal in that case, the United States 10th Circuit Court of Appeals noted that "Woehrle's concession that he was not qualified to design a tire" and that his design theory had been ruled inadmissible in other cases were sufficient grounds on which to exclude his design theory. *See Melinda Ho v. Michelin North America, Inc.,* 520 Fed. Appx. 658, 665-66 (10th Cir. 2013). The Court of Appeals did find that it was important that "Woehrle was not qualified to design tires." *Id.*

Additionally, Woehrle has also testified that he has personally observed tires with nylon overlays that have sustained tread belt separations (CR 1318) (see *Timothy Inman v. Bridgestone* deposition at p. 155, l. 9-12). He also agreed that nylon overlays are not a cure-all that one can guarantee will prevent tread belt separations (CR 1318) (*Id.* at p. 155, l. 13-16). In fact, he has *repeatedly* agreed he has seen thousands of tires with nylon overlays that have had tread belt separations. (CR 1318)(*Id.* at p. 155, l. 17; (CR 1311) *Pina v. Bridgestone/Firestone* deposition at p. 161). Finally, he has conceded that every major tire manufacturer in the United States makes tires without nylon overlays. (CR 1350)(See *Gotthelf* deposition at 153).

{03222971.DOCX / }

Woehrle has admitted under oath that the absence of a nylon overlay does not mean that a steel belted radial tire is defective in design. (CR 1340)(*Ho* deposition testimony at 135, line 9). More importantly, he has agreed that nylon overlays do not prevent tread separations. (CR 1340) (*Id.* at p. 136, line 20). In fact, there was never a showing from Woehrle that the use of a nylon overlay in the subject tire would have prevented the tread belt separation in this case. This is the very type of "analytical gap" that has been pointed out by the Supreme Court of Texas. *See Volkswagen of America, Inc. v. Ramirez*, 195 S.W.3d 897, 906 (Tex. 2004). In other words, there is *nothing* in this record which would demonstrate that a nylon overlay would have prevented the tread separation in this case, much less the accident itself. So, in addition to the qualification questions, the trial court could have easily also excluded Woehrle because of the analytical gap inherent in his nylon overlay conclusions.

{03222971.DOCX / }

## 2. Woehrle was not qualified to testify regarding any supposed marketing defect

The second issue upon which Woehrle sought to testify was the alleged marketing defects in the tire relating to: (1) failing to warn that the tire did not have a nylon overlay and (2) failing to warn that all tires over 6 years old should not be used regardless of tread life. Setting aside for the moment the entire problem with the nylon overly theory addressed above, Woehrle was even *less* qualified to talk about any marketing defect.

The *Ho* case, standing alone, shows why the trial court could have easily concluded that Woehrle was not qualified to testify as to a marketing defect. The *Ho* district court opinion found that "Woehrle has admitted in other lawsuits that he is not a warnings expert". See *Melinda Ho v. Michelin North America, Inc.* 2011 WL 3241466 at *7 (D. Kan) *and* at 520 Fed Appx. at 662 (10th Cir.). Woehrle has testified that he does not hold himself out as an expert in the effectiveness of warnings (CR 2893) (deposition in *Jennifer Leann Myers v. Paccar, Inc.* at p. 69) and he does not hold himself out as an expert on sizing, lettering, how human beings may react to certain warnings in terms of their apparent size or wording. (CR 2983)(*Id.* at p. 69). He has never published in the area of tire warnings or labeling. (SR 3943)(*Gotthelf deposition* at p. 97). He has testified that he does not hold himself as a warnings expert. (CR 2880) (deposition in *Deborah Sparks v. Metzler Motorcycle Tire North America Corp., et al.* at p.

20

171). Clearly, the trial court could not have abused its discretion in the face of such facts in excluding opinions relating to warnings.

### 3. Woehrle was not Qualified to Testify Regarding any Supposed Manufacturing Defects

In regard to tire manufacturing, Woehrle has testified under oath that he does not consider himself to be an expert in tire manufacturing. (CR 1346)(*See Gotthelf* deposition at p. 51, l. 14-22). He testified that he had "no background" in tire manufacturing. (CR 1346)( *Id.*). He also testified that he would not hire himself to manufacture a steel belted radial tire. (CR 1295-96)(*Goodwill* trial transcript at p. 15, l. 11-16; p. 19, l. 22-24). Woehrle never had any work assignment in a tire manufacturing facility (CR1325) (*Urbina* deposition at p. 99, l. 10-12), he has never built a production tire (SR 2097-98)(*Perez* deposition at p. 221, l. 21-25) and he has never been involved in overseeing the tire manufacturing or building process (CR 1346)(*Gotthelf* deposition at p. 50, l. 3-5). He also never worked in the product analysis or technical analysis department at the only tire company for which he was ever employed. (CR 1315)(*Inman* deposition at p. 28). Woehrle is also not a professional licensed engineer (CR 1294) (*Goodwill* trial transcript at p. 13, l. 17-19) and has no degree in any field of engineering. (CR 1294)(*Id.* at p. 13, l. 14-16).

In the *Ho* case Woehrle also wanted to claim that there were manufacturing defects in the Michelin tire. Once again, Woehrle was unable to cite any peer

21

reviewed literature supporting his theory, which, of course plagues his manufacturing defect theories in this case. *See Melinda Ho v. Michelin North America, Inc.* 2011 WL 3241466 at \*7 (D. Kan) *and* at 520 Fed Appx. at 662 (10th Cir.). Since Woehrle does not consider himself to be an expert in regard to tire manufacturing (CR 1346) (*See Gotthelf* deposition at p. 51, l. 14-17), would not hire himself to be a tire manufacturing engineer (CR 1296)(*Goodwill* trial transcript at p. 19, l. 22 -24) and has taken no courses or published in the area of tire manufacturing (CR 1347)(*Gotthelf* deposition at p. 58-59), it was certainly not an abuse of discretion for the trial court to find that he does not possess the necessary knowledge, skill, experience or training to testify in regard to tire manufacture.

As in his *Ho* testimony, Woehrle does not identify any published scientific study or text which support his claim regarding a thin innerliner in this case. He has never designed an innerliner for any steel belted radial tire (CR 1317)(*See Inman* deposition at p. 150). He also provides no test data regarding an innerliner, even though he agrees that the real measure of an innerliner is not its dimension but its performance. (CR 1308)(*See* deposition in *Pina v. Lopez* at p. 152). He has no evidence that the tire in question had a history of flats or a need for additional air pressure, which would be the example of lack of "performance" of the inner liner of the tire.

{03222971.DOCX / }

4.  Woehrle's ipse dixit problem

While all of the above manifestly shows why the trial court did not abuse its discretion, there is a final, perhaps more subtle, point that could also have informed the trial court's decision.

The courts have continuously pointed out that an expert cannot rely on their own "say so" or "ipse dixit" to support their opinions. Throughout the brief, Appellants tout Woehrle's "experiences" at Uniroyal (albeit 30 years ago) and the supposed wealth of knowledge gained there. They likewise continually call him an "engineer" even though he has no engineering degree or license, and cite to tests he conducted more than 30 years ago as the basis for his opinions. On the other hand, he has refused to talk about that experience because if he did so he would violate his agreement with Uniroyal to not disclose trade secrets. (SSR 0043-45)(*Gotthelf* deposition at p. 94-95, 100; (SR 2098)(*Perez* deposition at 225). What we do know is that he was terminated by Michelin in 1991 (CR 1295)(*Goodwill* transcript at 14).

It is well settled that there must be objective, independent validation of the expert's methodology. *Havner* supra at p. 712. As noted by our Supreme Court:

> Similarly, to say that the expert's testimony is some evidence under our standard of review simply because the expert testified that the underlying technique or methodology supporting his or her opinion is generally accepted by the scientific community is putting the cart before the horse. As we said in *Robinson*, an expert's bald assurance of validity is not enough.

{03222971.DOCX / }

*Havner* supra at p. 712.

Woehrle's defect theories cannot permissibly be based upon any testing he performed at Uniroyal because he does not have that testing and he cannot disclose the details of that testing because it would violate his confidentiality agreement with Uniroyal. Further, the trial court was not required to rely upon Woehrle's "say so" as to the results of any experience he had with nylon overlays or the other issues at Uniroyal because the "underlying data should be independently evaluated in determining if the opinion itself is reliable." *Merrell Dow Pharms. Inc. v. Havner,* 953 S.W.2d 706, 712-713 (Tex. 1997). Woehrle has not – and could not consistent with his confidentiality agreements – brought forward the results from any testing that was performed at Uniroyal regarding nylon overlays.

As Woehrle has admitted and been adjudicated as not qualified to be a tire design expert, and because he cannot disclose details of testing that he performed at Uniroyal because this would violate his confidentiality agreements, he is necessarily relying on his own "say so" to claim his opinions are reliable. *Merrell Dow Pharms. Inc. v. Havner* at p. 713. Essentially, he is saying "trust me, I did the testing when I was with Uniroyal, so I know what I am talking about." Of course at the same time he is saying "I can't give you details about the testing I did or the results achieved because that would get me in trouble with my former employer." That is the epitome of an *ipse dixit* issue. There is no way for either Goodyear or

24

the trial court to assess the underlying data to see if Woehrle is being accurate or is making up his opinions out of whole cloth. Given his "hired gun" status, this inability (or unwillingness) to support his "say so" with facts is also fatal to his opinions, and the trial court could not have erred in excluding them on that ground, even if he were otherwise qualified to testify.

**Response Point 4: A review of the *Robinson* factors along with the analytical gap problems show that the trial court did not abuse its discretion in excluding Woehrle.**

Appellants' arguments to the contrary notwithstanding, cases involving tire disablement have historically been assessed under the *Daubert/Robinson* standards as a part of the determination of reliability. *See Kumho Tire Co. Ltd v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 1177-78 (1999)(excluding Dennis Carlson, Appellants' first expert here, for lack of reliability); *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 801 (Tex. 2006)(reversing court of appeals judgment finding Rex Grogan reliable); *Goodyear v. Rios*, 143 S.W.3d 107 (Tex. App. – San Antonio 2004, pet. den.).

In *Robinson,* the Texas Supreme Court identified six non-exclusive factors to consider in determining whether scientific evidence is reliable, and thus, admissible under Rule 702. *See Robinson*, 923 S.W.2d at 557. These *Robinson* factors are: (1) the extent to which the theory has been or can be tested; (2) the

25

extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the nonjudicial uses which have been made of the theory or technique. *Robinson*, 923 S.W.2d at 557.

Put simply, the trial court would not have abused its discretion in finding that Woehrle met *none* of the Robinson factors. There is no evidence in the record that Woehrle's theories are anything but subjective, he never tested anything, he has not had his theories regarding nylon overlays, "interlaminar shear" or "weak boundary layers" (which appear to be the sum of his design and manufacturing opinions) to publication or peer review, and there is no showing that anything he says has been accepted within the relevant scientific community. To the contrary, if his theories were generally accepted, *all* tires would have a nylon overlay, which he admits is not the case. His opinions were not developed in the course of scientific research or endeavor, but were handsomely compensated opinions for the purpose of this litigation. When added to the lack of qualifications and the analytical gap demonstrated above and *ipse dixit* problem, the trial court was clearly well within its discretion in concluding that the testimony was unreliable under *Robinson*.

26

<u>Response Point 5</u>: **Having correctly exercised its discretion in excluding Woehrle, the summary judgments in favor of Goodyear were also proper, as Plaintiffs had no other evidence of a defect in the tire in question which could support any of their design, manufacturing or marketing claims.**

A review of Appellant's brief does not appear to reveal an argument -- much less a record reference[5] – indicating that once Woehrle was properly excluded, there was any fact issue on a product defect. Appellants talk about Woehrle's findings on causation issues, autopsy results and the reports of their other experts as to how the accident happened. Without proper expert testimony about a defect, however, the causation of the accident is basically of no import under the no evidence summary judgment standard, as the existence of a product *failure* is not evidence of a product *defect*. In that regard, this case is similar to *Mendez*, in which the Texas Supreme Court rejected a manufacturing defect claim involving a tire manufactured by Cooper Tire that lost its tread. *See Cooper Rubber Tire & Co. v. Mendez*, 204 S.W.3d 797, 799 (Tex. 2006). The car rolled several times and four passengers died at the scene. *Id.* After excluding expert testimony on the manufacturing defect issue, the Court held that the mere fact that the tire failed in these circumstances is insufficient to establish a defect of some sort because this

---

[5] The Court has probably noted that there is not a single record reference anywhere in the 14 pages of argument related to the summary judgment issues. *See Appellants' Brief at 37-51*. It is not incumbent on this Court to dig through the record to see where, if anywhere, the Appellants statements might find support in the record. *See Heritage Manor, Inc. v. Tidball*, 724 S.W.2d 952, 956 n.1 (Tex. App. – San Antonio 1987, no pet); *Brandon v. American Sterilizer Co.*, 880 S.W.2d 488, 493 (Tex. App. – Austin 1994, no pet.).

{03222971.DOCX / }

fact would amount to evidence of a defect so slight as to make any inference a guess [and] is in legal effect no evidence. *See Cooper Rubber Tire & Co. v. Mendez*, 204 S.W.3d 797, 807 (Tex. 2006). Here too, the mere fact that the tire was allegedly the cause of the accident is insufficient evidence of a defect.

Appellants presented no evidence (other than Woehrle's unreliable opinions) as to the reason why the tire failed, and it is not appropriate for Appellants to thereafter speculate as to the cause of the failure, much less the cause of the accident.[6] As the Texas Supreme Court held in *Ford Motor Co. v. Ridgway*, upholding summary judgment for the manufacturer on a manufacturing defect claim:

> The Ridgways produced no direct evidence of the fire's cause, and their circumstantial evidence that a manufacturing defect existed in the Ford F–150 when it left the manufacturer does not exceed a scintilla. Ridgway's affidavit establishes only that a fire occurred, and Greenlees could say no more than that he suspects the electrical system caused the fire.

*Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004). Without Woehrle's testimony, the only evidence the Appellants have is that a tread separation occurred, and not even a suspicion that *this tire* was somehow defective.

---

[6] Goodyear also put on ample evidence as to why the Appellants' causation arguments were incorrect, but those did not need to be reached by the trial court because of the exclusion of Woehrle. On that issue, it is important to note that Woehrle was excluded completely, and Appellants do not appear to have argued – and have certainly not directed the Court to anything in the record – that would show Woehrle's exclusion was incorrect regarding his supposed "accident reconstruction" or causation testimony. If anything, his qualifications as a supposed causation expert were even weaker than those related to his other proposed areas of testimony.

{03222971.DOCX / }

As tread separations can occur due to conditions unrelated to tire design or manufacturing, such as impact damage, overdeflection, underinflation, overload and other abuse (CR 1680, et seq., 1722, et. seq), Appellants' conjecture is not enough to bear their burden of proof.

As such, the trial court did not err in granting the summary judgments in Goodyear's favor, as there was – under the record before the trial court – no evidence of a defect that caused this accident.

> **Response Point 6: Summary judgment was proper even if Woehrle had not been excluded as his testimony cannot meet the standard under Texas law for showing that either a manufacturing or design defect existed, much less a marketing defect.**

It was part of Appellants' burden in responding to the no evidence motion for summary judgment to demonstrate that an alternative design would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death. Tex. Civ. Prac. & Rem.Code Ann. § 82.005(b)(1). Woehrle's testimony –even if credited – falls short of the necessary factual basis to support any of the Appellants' claims.

Specifically, over the years Woehrle has repeatedly agreed that a nylon overlay – the centerpiece of both his design and marketing opinions – does not prevent tread belt separations from occurring, as he has seen thousands of tires with nylon overlays which had such separations. (CR 1311). So, his only "alternative design" (and the apparent sole basis for the alleged failure to warn

{03222971.DOCX / }

claim)[7] would not necessarily have prevented the accident made the basis of this suit. Even the best spin Appellants can put on it was that it would "make the tire more robust and enhance the tire's performance." *See Appellants' Brief* at 33. A "design is not a safer alternative if, under other circumstances, [it would] impose an equal or greater risk of harm than the design at issue." *See Casey v. Toyota Motoer Engineering Mgf Co North* America, 770 F. 3d 322, 331-32 (Fifth Cir. 2014)(*citing Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 196 (5th Cir.2006)). Similarly, "the plaintiff must show the safety benefits from [the] proposed design are foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety." *Id.*

Even accepting the statement as true, the simple fact that the tire might (arguably) have been made more "robust" does not demonstrate that it would have "prevented" or even "significantly reduced" the risk to *this tire* in *this accident.* The expert in *Casey* testified that had Toyota used an alternative airbag designed by Toyota, the plaintiff there would not have been ejected from the vehicle. *See id.* at 331. As the Fifth Circuit noted in *Casey*, however, "[t]his statement is not sufficient evidence that the alternative design would have prevented or reduced the risk of injury because [the expert] did no testing to suggest that the presence of the

---

[7] Although it is difficult to tell given the nature of the Appellant's brief, it does not appear that they have attempted to bring forward the warnings claim related to "age" of the tires. This is not surprising, as Woehrle has repeatedly been forced to admit that there is absolutely no support in the reliable peer reviewed literature for such claims, and his lack of evidence also caused dismissal of the similar claim in *Ho. See Ho at 668 (10th Cir.)*

{03222971.DOCX / }

alternative airbag would have changed the result *in this case.*" *Id.* at 331-32 (emphasis added). That is *exactly* the problem with Woehrle's testimony here. Assuming everything in his favor, the best he can say is that the nylon overlay would have made the tire more robust, not that it would have *prevented* the result here and he did not perform testing to quantify anything related to this accident.

Likewise, for the same reasons set forth in *Casey*, Appellants cannot meet the standard for showing a manufacturing defect.

> Manufacturing defect cases involve products which are flawed, i.e., which do not conform to the manufacturer's own specifications, and are not identical to their mass-produced siblings. The flaw theory is based upon a fundamental consumer expectancy: that a mass-produced product will not differ from its siblings in a manner that makes it more dangerous than the others....

*See Casey* at 329, *citing Green v. R.J. Reynolds Tobacco Co.,* 274 F.3d 263, 268 (5th Cir.2001). A manufacturing defect claim is based on a claim that the allegedly defective product differs from other products in the same product line. *See id.* Thus, in order to prove a manufacturing defect in this case, Appellants were required to show that the tire in this case differs from the other tires that Goodyear produced in the same time period. One of Woehrle's opinions was that there was a "dog ear" and a "step off" in the belts of the subject tire. It will come as no surprise to this Court that this was a theory that the Court of Appeals for the Tenth Circuit rejected due to an "impermissible analytical gap" existing between premise and conclusion. In the *Ho* opinion the Court noted that Woehrle had admitted there was a

31

tolerance for step off variation and Woehrle conceded that the peer-reviewed literature "suggests that step-offs and dog ears do not cause belt separations, and he was unable to cite any peer-reviewed literature supporting his contrary theory". *See Ho,* 520 Fed. Appx. at 661 (10th Cir. 2013). In this case, however, Woehrle went one step further and conceded that none of those alleged conditions caused the tread separation/detachment event in question. (SSR 0033)(*Perez* depo at 201, 202, 203, 204). Put simply, Plaintiffs have not shown, even were Woehrle qualified as an expert, that a reasonable jury could find a manufacturing defect here. *See* 242 S.W.3d. 32, 41-42 (Tex. 2007)(requiring that the product deviate from specifications or planned output).

> **Response Point 7:** **Appellant's statements and arguments about Goodyear's experiences with other Load Range E tires is contrary to the actual testimony in the case, and, in any event, does not create a fact issue as to this tire.**

Throughout the fact section and then again towards the end of the brief, Appellants set forth a number of purported facts (unsupported by record citations) relating to Load Range E tires. Contrary to Appellants' pronouncements, however, no one at Goodyear ever said that this tire, much less all Load Range E tires contained a design defect if they did not contain a nylon overlay. While it is true that in late 1995 Goodyear observed a slight increase in crown area separations on some Load Range E tires (SR0090)(*see* oral deposition of Richard Olsen dated February 19, 2009 at p. 19, l. 13), Goodyear never found the root cause of that

32

condition. (SSR0136)(*see* oral deposition of Joseph Zekoski dated February 18, 2009 at p. 52, l. 11). The investigation seeking to identify the root cause of the increase in crown area separations began in late 2005 and continued well into 2008. The concept of a "weak boundary layer" was a hypothesis presented in 1996 which was later ruled out as a root cause. (CR 3395). Likewise, in addition to the fact that it is undisputed that all tires have interlaminar shear, (SSR0097), it was determined that the level of interlaminar shear was not a problem either and it was ultimately ruled out as a hypothesis. (SSR0097).

In other words, the hypotheses of both a "weak boundary layer" and an "interlaminar shear" were simply two of many ways that Goodyear was trying to look at the condition, all of which were ultimately ruled out. There is nothing in the record suggesting that Woehrle performed any testing on any Goodyear Load Range E tire to address the already rejected hypothesis of "weak boundary layer" or "interlaminer shear," and therefore his opinions – even if he was qualified to give them – are pure speculation. Moreover, nylon overlays did not solve a "problem" as urged by Appellant's brief, as even Woehrle admits that even a nylon overlay does not prevent tread belt separations. Even if the tire was made "more robust" that does not mean it was defective without the nylon overlay in the first place, which again, is an analytical gap that Woehrle was never able to bridge.

33

## CONCLUSION

It is hard to imagine a less qualified hired witness than William Woehrle on design, manufacturing or marketing matters. He has never designed any component of a steel belted radial tire and has testified under oath that he would not hire himself to design a steel belted radial tire. The Appellants, in essence, were paying him to redesign a steel belted radial tire, a task for which he was woefully unready. He likewise has never manufactured a steel belted radial tire and would not hire himself to manufacture a steel belted radial tire, but the Appellants hired him to claim that there are manufacturing defects in the subject tire even though he does not know that those alleged defects deviate from the specifications or the planned output for the subject tire. The Appellants hired Mr. Woehrle to testify regarding warnings even though he has testified that he is not a warnings expert and there is no showing that he has ever prepared a warning that was ever used on any product ever sold in the market place. The moving target that is his sworn testimony is calculated to make a mockery of *Daubert, Robinson* and their progeny. Just as the trial court saw right through his charade, the "hired gun" nature of his testimony should be read in light of the *Ho* case which excluded him on each of the grounds on which he sought to testify here. The trial court properly exercised its discretion and excluded Woehrle, and as there was no other evidence in the record supporting Goodyear's liability in the case, the trial court

34

did not err in granting summary judgments in Goodyear's favor. Even if the Court has jurisdiction to consider the claims, the court should affirm the trial court in all respects.

## Prayer

For all the reasons set forth above, The Goodyear Tire & Rubber Company s. respectfully requests that the Court affirm the trial court's granting of the motion to exclude, and the summary judgments in its favor, grant it all costs of appeal, and for such other and further relief to which it may be entitled.

Respectfully Submitted,

James M. "Jamie" Parker, Jr.
State Bar Number 15488710
J. Michael Myers
State Bar Number 14760800
NAMAN HOWELL SMITH & LEE, PLLC
Union Square II
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 731-6364
Fax (210) 785-2964
Email: jparker@namanhowell.com

**ATTORNEYS FOR APPELLEE
THE GOODYEAR TIRE &
RUBBER COMPANY**

35

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been sent on the 23rd day of February 2015, to the following, as shown below:

William G. Neumann, Jr.
Hagood & Neumann
1520 E. Highway 6
Alvin, Texas 77511
281-331-5757
281-331-1105 (fax)

_____
JAMES M. PARKER, JR

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-face and length requirements of amended rule 9.4 of the Texas Rules of Appellate Procedure. Exclusive of exempted portions stated in amended rule 9.4(9)(1), the brief contains 8,830 words, as calculated by Microsoft Word, the program used to prepare this document.

_____
JAMES M. PARKER, JR

36

{03222971.DOCX / }